Michael D. MOEHL

v.

The UNITED STATES.

No. 91–1393C.

United States Court of Federal Claims.

Aug. 30, 1993.

Ronald P. Keller, Xenia, OH, attorney of record for plaintiff.

Franklin E. White, Jr., Washington, DC, with whom was Asst. Atty. Gen. Stuart M.

Gerson, for defendant (Lt. Col. David Yastishock, of counsel).

## OPINION

HARKINS, Senior Judge:

Michael D. Moehl, plaintiff, enlisted in the Air Force on July 7, 1972; after consecutive enlistments, he was in a 4-year enlistment period that began December 20, 1984, and would terminate December 19, 1988. He was discharged on April 28, 1988, with an honorable discharge, as part of an early release program for strength reduction pursuant to AFR 39-10. When discharged he was in the grade of technical sergeant, serving at Wright-Patterson Air Force Base, Ohio.

Plaintiff had applied to the Air Force Board for the Correction of Military Records (AFBCMR or Board) on March 7, 1988, for removal of certain records that involved eligibility for reenlistment under the Selective Reenlistment Program (SRP). On June 1, 1989, the AFBCMR in a 2-1 vote denied the application. On June 20, 1989, plaintiff submitted additional evidence to the AFBCMR. After reconsideration, the Board on April 24, 1990, in a 2-1 vote, approved the application, and recommended that the records be corrected to show that plaintiff was not "discharged on 28 April 1988, but on that date he was ordered PCS to his home of record pending further orders."

On that same date, April 24, 1990, the Deputy for Air Force Review Boards (AFRB) disapproved the Board's recommendations. The Deputy AFRB specifically found that plaintiff "has not sustained his burden of establishing the existence of either an error or an injustice warranting his reinstatement on active duty." The Deputy AFRB, however, found there was not an adequate basis to deny plaintiff an opportunity to reenlist, and directed his reenlistment eligibility code be changed to 1J, a code that would permit reenlistment.

Plaintiff's initial efforts to reenlist were frustrated at the processing station by confusion over plaintiff's eligibility status under the regulations. This was brought to the Deputy AFRB's attention by a memorandum dated October 26, 1990, from the Air Staff. The matter was clarified in a Memorandum For the Chief of Staff by a Corrected Directive that amended a memorandum dated June 20, 1990, from the Deputy AFRB to the Executive Director, AFBCMR. The Corrected Directive authorized plaintiff's military records be corrected to show "he is authorized to enlist in the Regular Air Force within 150 days of the date of this memorandum as an exception to policy." Plaintiff reenlisted on November 16, 1990, in his original grade of technical sergeant and, as of November 26, 1991, he was serving on active duty.

The issue is whether the Deputy AFRB has been delegated authority to overrule factual determinations of the AFBCMR, with power to refuse to accept the Board's recommendation to correct military records so as to show reinstatement. A subordinate issue is whether, on the facts of this case, the action of the Deputy AFRB, was arbitrary, capricious, lacked support of substantial evidence, or otherwise was unlawful.

Plaintiff's claims are before the court on cross-motions for summary judgment. Oral argument was waived by agreement of the parties. A comprehensive statement of facts has been stipulated, and material facts are not in dispute. Disposition by summary judgment procedures is appropriate.[1]

Plaintiff's claims are illuminated by examination of the chronology of significant events:

1. Defendant initially moved to dismiss, in part, under RCFC 12(b)(1), lack of subject matter jurisdiction, and 12(b)(4), failure to state a claim upon which relief can be granted, or, in the alternative for summary judgment, RCFC 56. This court traditionally has exercised subject matter jurisdiction over military pay claims and compliance by boards for the correction of military records with requirements established by statute and regulation. *See Sanders v. United States*, 594 F.2d 804, 219 Ct.Cl. 285 (1979). The record contains materials outside the pleadings that are not excluded by the court. Under RCFC 12(b)(4), defendant's motion is treated as one for summary judgment.

November 24, 1987:

Plaintiff's supervisor (Maj. L.R. Lee) and unit commander (Maj. C.D. Harding) executed AF Form 418, the form used in the SRP. Plaintiff was not selected for reenlistment or for retention beyond his current enlistment. The section for supervisors remarks cited erratic and declining performance requiring three counselings, a driving while intoxicated (DWI) offense in Korea, an off-base complaint, a mental health evaluation noting antisocial tendencies, poor work performance, substandard personal appearance, and unprofessional attitude. The unit commander remarks section noted his status in the Weight Management Program (WMP).

December 12, 1987:

Plaintiff filed a statement on appeal that addressed each point in the remarks section of the AF Form 418, and attached (1) his request for voluntary placement in the WMP, and (2) the last five performance ratings (APR) previous to assignment at ASD.

January 22, 1988:

Plaintiff's appeal of the denial of reenlistment was approved by the appeal authority (Col. S.F. Koller). Nothing was stated in the remarks section.

January 28, 1988:

Capt. R.J. Lucas signed a Memo for Record, prepared at the request of Maj. Lee, which described a discussion she had with plaintiff on January 27, 1988. In that conversation plaintiff stated he was glad the squadron commander (Maj. Harding) was leaving, that the squadron commander was very unreasonable and referred to the squadron commander as a "penis." [Sic. Probably a derogatory equivalent was used.]

February 11, 1988:

Plaintiff's supervisor (Maj. L.R. Lee), and unit commander (Maj. W.T. Willis) executed a second AF Form 418 in which plaintiff was not selected for reenlistment. The supervisor's remarks section was virtually a verbatim repetition of that in the November 24, 1987, Form 418, with the following addition: "On 29 Jan 88, he was flagrantly disrespectful to another Major in the unit. I have contacted Headquarters Squadron Section Commander for appropriate action." The unit commander remarks section includes comments on plaintiff's APR history as showing a highly erratic and inconsistent pattern of performance, references to DUI/DWI incidents in 1983, in Virginia, and in 1985 in Korea, and the following additional remark: "I have now begun action to impose punishment under Art. 15 UCMJ, for violation of Article 89."

February 12, 1988:

Plaintiff at 0930 was served with AF Form 3070 signed by Major W.T. Willis on February 12, 1988, giving notice that punishment under Article 15 for violation of Article 89 was under consideration for alleged misconduct, in that, on or about January 27, 1988, plaintiff behaved with disrespect to Maj. C.D. Harding, plaintiff's superior commissioned officer "by referring to him as a penis, or words to that effect."

February 18, 1988:

Plaintiff signed section 5 of AF Form 3070 and marked the form to show he had consulted a lawyer, that he waived right to demand a court martial and accepted nonjudicial punishment under Article 15, 10 U.S.C. § 815, and that a written presentation was attached.

Plaintiff was represented by AF Area Defense Counsel. Counsel's statement, dated Feb. 18, 1988, included assertions that "an Art. 15 is an overreaction," that the evidence against plaintiff was Capt. P.J. Lucas' statement, that she had referred the matter because she felt plaintiff's behavior "warranted counseling," and that the Art. 15 was really about "trying to take a minor incident, and blowing it up so that a new 418 action could be justified and initiated."

February 19, 1988:

Major W.T. Willis found plaintiff had committed the offense alleged and imposed as punishment: reduction to grade of Staff Sergeant and ordered to forfeit $100. The reduction in grade was suspended until August 18, 1988, at which time it would be remitted without further action. Plaintiff

signed section 8 of AF Form 3070, marked to indicate he would appeal.

February 22, 1988:

The ten calendar day period for plaintiff to appeal the February 11, 1988, nonselection expired. No appeal was received by the CBPO during the period.

February 25, 1988:

Plaintiff's appeal of the Article 15 punishment was denied by the appellate authority (Lt. Gen. W.E. Thurman). The AF Form 3070 was signed by Maj. W.T. Willis and plaintiff, and the Article 15 proceeding was concluded.

March 7, 1988:

Plaintiff's application for correction of records, filed with the AFBCMR, requested: (a) the February 19, 1988, Article 15 punishment (AF Form 3070, Nos. 6 & 7) and AF Form 418, dated February 11, 1988, be removed from his records, and (b) reenlistment eligibility be reinstated. The application was supported by a Statement of Circumstances, in detail, and eight additional attachments.

March 10, 1988:

Plaintiff submitted supplementary information to his application for correction of records to add three alleged violations of AFR 12–50 and three alleged violations of AFR 30–2. These allegations related to retention and use of records concerning mental health evaluations, alcohol rehabilitation cases, and police incident reports, as well as to retaliation for complaints.

April 28, 1988:

Plaintiff while serving in the grade of technical sergeant was discharged under the provisions of AFR 39–10 (Early Release Program—Strength Reduction) with an honorable discharge. At that time, plaintiff had served 3 years, 4 months, and 9 days active duty in his current enlistment with no time lost, and had a total active service of 15 years, 9 months and 22 days. Personnel with active duty of 16 years or more have a right to a Secretarial Review of their discharge. AFR 39–10.

July 29, 1988:

AFBCMR provided plaintiff its advisory opinion for comment.

August 18, 1988:

Plaintiff submitted a rebuttal of the advisory opinion that addressed the AF 418 nonselection, the Article 15 punishment, prior convictions, his service records, retaliation, and record misuse. The Article 15 matter was viewed as a minor incident "blown out of perspective to solidify the AF 418." Plaintiff stated he in fact had said "seemed dorkey" and asked is that "penis like"? In recognition of his April 28, 1988, discharge, plaintiff modified the request for relief to ask for reinstatement, promotion eligibility and back pay.

June 1, 1989:

The AFBCMR, in a 2 to 1 vote, denied plaintiff's application. The application had been reviewed by the Air Staff; the Directorate of Personnel Program Management Reinstatement Program (DPMATR), the Social Actions Operations Division (DPMYS), and the Military Justice Division (AFJAJM), each of which had recommended denial. The Board found the following facts:

1. Although he states counseling was recommended and says the Article 15 of 12 February 1988 was issued to solidify the denial of his reenlistment, we believe the imposition of the punishment was the prerogative of the commander based on sufficient reliable evidence. In addition, the JA review of the appeal concludes there is absolutely no evidence of bad faith or ill will behind this action.

2. It is our opinion that the failure to notify applicant within five days of the favorable appeal decision in the first denial of reenlistment was a harmless error and has been adequately discussed in Exhibit C.

3. Regarding the basis for the second denial of reenlistment, we accept the DPMATR rationale that commanders are required to consider unfavorable information from any substantiated source that suggests an inability or unwillingness to comply with expected standards of discipline, which would include APRs

and other information from a previous enlistment.

4. Applicant's contentions that the Air Force illegally used documentation to support his discharge are not supported by material which would override the rationale of DPMYS that the documentation maintained by ASD/CCQ and all documentation used to support his denial of reenlistment were found to be appropriate and correct.

The minority report of the dissenting Board member included a comment that the severity of the nonjudicial punishment in the Article 15 incident is "an overreaction to the misconduct, and especially so for one who has served honorably for almost 16 years, and gives the appearance of using the Article 15 to augment and strengthen the prior basis for denying applicant's reenlistment."

June 20, 1989:

Plaintiff notified the Board that further research had disclosed new and important evidence that was not available in his initial filing or during the Board's action. He requested the case be left open pending receipt of his new evidence and for reconsideration and review.

June 22, 1989:

Plaintiff submitted a statement signed by Ms. Cora B. Hubbard, an individual who had over 40 years active civil service experience in Air Force administration, publication and documentation (ASD/IMPL Publications Management Division). The statement recited that Ms. Hubbard had supplied information to plaintiff concerning Personal Information Files (PIFs), Police Incident Reports and Rehabilitation Case files, and had provided guidance in the documentation of plaintiff's application to the Board. When plaintiff told Ms. Hubbard his appeal had been denied, he also told her there had been an Inspector General's review of the case. The statement includes:

> Since I had provided him the information as to documentation retention and maintenance, I was surprised that NO INSPECTOR/INVESTIGATOR EVER CONTACTED ME AS THE ADMINISTRATION EXPERT/DOCUMENTATION/PUBLICATIONS MANAGER as to the validity of maintaining the documentation in the discharge package....
>
> Through my review of the package presented to then TSgt Moehl, it is my considered opinion that no only were copies being maintained outside the regulatory requirements of AFR 12–50, Vol 2, but, specific documents clearly identified as investigative/security records under AFR 12–50, Vol 2 were misused to justify/document a discharge. The 398/399 form is *used for a basis of a security clearance investigation* NOT ADMINISTRATIVE OR UCMJ DISCHARGE ACTIONS. This blatant misuse of this documentation is a violation of Air Force administrative regulations/policies and should not be condoned at any level. [Emphasis in the original.]

April 24, 1990:

On reconsideration, the AFBCMR, by a 2 to 1 majority concluded plaintiff's requests should be granted as indicated. The Board cited Ms. Hubbard's statement, and stated:

> We again note the following circumstances: That the officer who reported applicant evidently felt he should be counseled for unprofessional behavior; however, the commander whose previous denial of applicant's reenlistment had been overturned, imposed the Article 15 and used it as an additional issue in again denying reenlistment on 19 February 1988. Although such action was the commander's prerogative, it appears an overreaction to a relatively minor and isolated incident and the new evidence is convincing that there is reasonable doubt concerning the propriety of documentation used in the discharge action and gives the appearance of "gunning" for him.

The Board noted mitigating circumstances and concluded:

> In view of the foregoing, we believe applicant should be given the benefit of the doubt and his records corrected

to allow him to complete his 20 years for retirement.

The Board recommended the pertinent military records be corrected to show that:

 a. AF Form 418, Selective Reenlistment/Noncommissioned Officer Status Consideration, dated 11 February 1988, be, and hereby is, declared void and removed from his records.

 b. The Article 15, initiated on 12 February 1988, with the punishment imposed on 19 February 1988, be, and hereby is, declared void and removed from his records, and all rights, privileges and property of which he may have been deprived, be restored.

 c. He was not honorably discharged on 28 April 1988, but on that date he was ordered PCS to his home of record pending further orders.

The dissenting member did not submit a Minority Report.

The Deputy AFRB, in a memorandum for the executive director of the AFBCMR, disagreed with, and overruled, the AFBCMR panel decision. The memorandum stated the nonselection for reenlistment did not constitute either an error or an injustice. He disagreed with the panel's acceptance: (1) that individuals in the chain of command maintained records well beyond the presented regulatory cutoff period and misused other documents to justify the nonselection, and (2) that the nonjudicial punishment was an overreaction, with the implicit conclusion that plaintiff was a victim of a personal vendetta.

The memorandum links the Article 15 nonjudicial punishment to the nonselection for reenlistment, and also uses it as a basis for denial of reinstatement to active duty. The alleged failure to show a basis for reinstatement, however, was not sufficient to bar reenlistment. The memorandum, in this regard, includes the following:

 ... Accepting this line of reasoning, the only additional derogatory information at the time of the second nonselection for reenlistment was the incident of disrespect to a senior officer which was disposed of by nonjudicial punishment. Since nonjudicial punishment is a corrective tool at the disposal of the commander, I do not believe it should, in and of itself, serve to bar the applicant's enlistment if his skills are required....

 Accordingly, I have directed his reenlistment eligibility code be changed to 1J.

May 10, 1990:

Plaintiff's Congressman (Representative T.P. Hall) forwarded to the AFBCMR a letter dated April 30, 1990, signed by plaintiff, which commented on the April 24, 1990, actions, and included a request for assistance to obtain a Full Secretarial Review. Rep. Hall asked the Board "to take the necessary action to insure that this review is carried out."

June 5, 1990:

Plaintiff's Congressman forwarded to the AFBCMR a statement dated March 20, 1990, by a former member (Capt. R.L. Darrah) of plaintiff's organization. The statement reported that prior to plaintiff's arrival in the organization rumors were circulating that he was a "problem child" and that Capt. Lee was chosen to "straighten him out." The statement also included speculation that plaintiff was "fingered from day one" and that "pressure was being applied from higher up, to get him out of the Air Force."

June 20, 1990:

The Deputy AFRB, in a memorandum to the AFBCMR's Executive Director, stated he still found the evidence was insufficient to conclude that the denial of reenlistment constituted either an error or an injustice. The memorandum includes the following:

 Notwithstanding the above, after carefully weighing all the evidence in this case, collectively, and in consideration of the most recent statement from an officer in the applicant's former organization, a degree of doubt has been raised whether or not he was serving in an environment that was conducive to his

being fairly treated. In this respect, I note this officer stated that prior to the applicant's arrival, rumors were circulating through the unit that applicant was a "problem child"; and that the immediate supervisor that recommended against his reenlistment was chosen as the officer to straighten the applicant out. He concedes that he is only speculating; nonetheless, this officer is convinced the applicant was fingered from day one and singled out for whatever reason for removal from the Air Force because of pressure from higher authority....

Therefore, it is my decision that the benefit of the doubt be resolved in favor of the applicant by permitting him to reenlist in the Regular Air Force provided he is physically and morally qualified.

■ Boards for the correction of military records have been established by a statute that confers broad powers in the Service Secretaries to remedy errors and injustices, acting through boards of civilians of the executive part of the military department. 10 U.S.C. § 1552(a)(1) (Supp IV 1988). The statute is remedial in nature and is a liberal mandate to correct errors and injustices. The status of record corrections boards in military procedures has been developed in a multitude of cases since the boards were first authorized in 1951. *See Sanders v. United States*, 594 F.2d 804, 219 Ct.Cl. 285; *Yee v. United States*, 512 F.2d 1383, 206 Ct.Cl. 388 (1975); Glosser & Rosenberg, *Military Correction Boards: Administrative Process and Review by the United States Court of Claims*, 23 Am.U.L.Rev. 391 (1973). In general, military correction boards have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief. *Duhon v. United States*, 461 F.2d 1278, 1281, 198 Ct.Cl. 564 (1972).

■ In this case, the findings of fact and recommendations of a three member panel of the AFBCMR relative to reinstatement and reenlistment were rejected by an individual who occupied a managerial position in the competitive civil service. The statute confers a broad discretion to the Secretaries to accept or reject corrections board recommendations in particular cases. The question here, however, is not the authority of the Secretary vis-a-vis the board; the question is whether the Secretary has exercised the discretion inherent in his office in a manner adequate to transfer this important function four levels down the administrative chain.

The statute requires corrections of military records to be made under procedures established by the Secretary concerned. For the military departments, the procedures must be approved by the Secretary of Defense. 10 U.S.C. § 1552(a)(3).[2] The Air Force is a separately organized department that operates under the authority, direction and control of the Secretary of Defense. 10 U.S.C. § 8011.

The Secretary of the Air Force is a civilian appointed by the President, with the advice and consent of the Senate. He is responsible for, and has the authority necessary to conduct, all affairs of the Air Force. 10 U.S.C. §§ 8013(a)(1) & (b).

**2.** On June 29, 1993, defendant was ordered to "file copies of actions by the Secretary of Defense relative to procedures of the AFBCMR, 32 C.F.R. §§ 865.0—865.29, and the SAFO 100.1 dated May 1, 1990, that show compliance with [10 U.S.C.] section 1552(a)(3)." Defendant's response, filed Aug. 13, 1993, states that AFR 31-3, effective May 31, 1985, was in force during all relevant times. No copy of any DOD action that approved AFR 31-3 procedures was provided. Defendant's response included a declaration of the AFBCMR examiner responsible for securing approvals for AFR 31-3 that states:

I specifically recall sending the proposed regulation to OSD to obtain approval and I specifically remember having received the coordination and approval of the regulation from OSD before publication of the final rule in the Federal Register.

Defendant's response did not address SAFO 100.1, because it "is not related to the procedures required by 10 U.S.C. § 1552."

Inasmuch as SAFO 100.1 was central to the delegation to the Deputy AFRB, defendant's response to the June 29, 1993, order neither resolves the issue of DOD approval nor provides information that affects or modifies the analysis of plaintiff's claims.

To assist the Secretary in carrying out his responsibilities, the statute establishes an Office of the Secretary, in which the principal officials are appointed by the President, with the advice and consent of the Senate. The office is composed of (1) the Under Secretary of the Air Force, (2) the Assistant Secretaries of the Air Force, (3) the General Counsel of the Air Force Department, (4) the Inspector General of the Air Force, (5) the Air Reserve Forces Policy Committee, and (6) other, established by law or designated by the Secretary. 10 U.S.C. § 8014.

The Under Secretary is a civilian appointed by the President, with the advice and consent of the Senate. 10 U.S.C. § 8015. There are four Assistant Secretaries, who are civilians appointed by the President, by and with the advice of the Senate. One of the Assistant Secretaries must be appointed with the principal duty of overall supervision over manpower and reserve component affairs. 10 U.S.C. § 8016. The General Counsel is a civilian appointed by the President, with the advice and consent of the Senate. 10 U.S.C. § 8019. The Inspector General is detailed to that position by the Secretary from the general officers of the Air Force. 10 U.S.C. § 8020.

The Secretary has broad powers to delegate authority to the Under Secretary and Assistant Secretaries. When directed by the Secretary, other Air Force personnel may be authorized to report on any matter to the Secretary, Under Secretary or any Assistant Secretary. Section 8013(f) provides:

(f) The Secretary of the Air Force may assign such of his functions, powers, duties as he considers appropriate to the Under Secretary of the Air Force and to the Assistant Secretaries of the Air Force. Officers of the Air Force shall, as directed by the Secretary, report on any matter to the Secretary, the Under Secretary, or any Assistant Secretary.

Delegations or assignments of statutory authority are accomplished by Secretary of the Air Force Orders (SAFOs). AFR 11–18. SAFOs are formal documents used to make specific delegations of authority or assignments of responsibility. They are used instead of informal papers, and when appropriate are incorporated in official Air Force publications. Special limitations or provisions affecting the delegation must be stated in the published order. AFR 11–18, § 1.

SAFO 100.1 (May 1, 1990) applies to functions of the Secretary, Under Secretary, and Assistant Secretaries. Section 1 provides that the Under Secretary and the Assistant Secretaries "are authorized to act for and with the authority of the Secretary of the Air Force on all matters for which the Secretary is responsible."

SAFO 100.1, § 6 applies to the Assistant Secretary (Manpower, Reserve Affairs, Installations, and Environment). Principal duties are: overall supervision of manpower; military and civilian personnel; reserve component affairs; installations; environment, safety and occupational health; and readiness support for the Department. General responsibilities include "providing guidance, direction and oversight of all matters pertaining to the formulation, review and execution of plans, policies, programs and budgets (PPBS)" relative to 11 listed functions. Functions within the responsibilities of the Assistant Secretary include:

g. Secretary of the Air Force Personnel Council and its component boards, to include the Air Force Discharge Review Board, the Air Force Board of Review, the Air Force Personnel Board, the Air Force Physical Disability Appeal Board, the Air Force Decorations Board, the Air Force Clemency and Parole Board, and the Council's responsibilities with respect to the DoD Civilian/Military Service Review Board;

h. The Air Force Civilian Appellate Review Agency;

i. The Air Force Board for Correction of Military Records.

SAFO 100.1 § 6 is an unlimited delegation to the Assistant Secretary to exercise the authority of the Secretary in all matters pertaining to the execution of PPBS for the AFBCMR. This delegation would

encompass exercise of discretion to accept or reject corrections board recommendations in a particular case. The overall purpose of SAFO 100.1 § 6, however, was to relieve the burdens on the Secretary by the provision of a vehicle to distribute the multitude of routine chores requisite for efficient administration of the Air Force. SAFO 100.1 is silent as to redelegation of authority and no distinction is drawn as to either discretionary matters or routine administrative matters. SAFO 100.1 does not establish any standard to be applied when discretion inherent in the Secretary is to be exercised.

On June 7, 1990, the Assistant Secretary (Manpower, Reserve Affairs, Installations and Environment) pursuant to SAFO 100.1 delegated to the Deputy AFRB "the authority to take final action on my behalf on cases and other matters pertaining to SAF/MIC, AFBCMR and AFCARA." This delegation contains the following instruction:

Although not a limitation on your authority to act on my behalf as specified above, where your decision represents a change in precedent or policy, is of significant White House, Congressional, departmental or public interest; or has been, or should be, of interest or concern to the Secretary or myself, for any reason, you will brief me prior to the decision unless the exigencies of the situation preclude such action. Moreover, with respect to all of the aforementioned areas of interest, you have the continuing responsibility to keep the Secretary and me informed of any and all matters pertinent to our responsibilities which should be brought to our attention for any reason.

This delegation on its face is ambiguous. The Deputy AFRB is authorized to take final action on behalf of the Assistant Secretary on AFBCMR cases and other AFBCMR matters, and is authorized to determine when exigencies of the situation preclude briefing the Assistant Secretary on seven specific areas of interest, but at the same time the Deputy AFRB has the continuing responsibility to keep the Assistant Secretary informed of all matters which should be brought to attention for any reason. No procedure, or standard, is created in SAFO 100.1 or in the delegation to the Deputy AFRB that resolves this ambiguity. In the absence of such procedure or standard, resolution of the ambiguity becomes personal with the incumbent Deputy AFRB.

The Deputy AFRB is in charge of an office that consists of the AFBCMR, the Air Force Civilian Appellate Review Agency (AFCARA) and the Air Force Personnel Council. AFBCMR and AFCARA ensure compliance with appropriate legal and policy guidelines in the correction of military records and in resolving civilian employee complaints. The Personnel Council advises the Air Force Secretariat on matters relating to various personnel policies and the effective management of active and reserve components of the Air Force. Boards under the Council examine such matters as discharges, physical disability cases, and decorations. United States Government Manual 1991/92, Office of the Federal Register, p. 200.

The position description for the Deputy AFRB is cast in the amorphous terminology typically used by personnel office classifiers; degrees of responsibility are delineated with stylized phraseology and limitations are expressed in general terms. The position description is not a vehicle in the delegation of the Secretary's authority and discretion. It does, however, reflect the agency's understanding of the authority exercised by the incumbent, and agency administrative operations.

The position description for the Deputy AFRB applies to a managerial position in the competitive service, in which the incumbent is a departmental appointee who reports to the Principal Deputy of the Assistant Secretary (Manpower and Reserve Affairs). Principal duties are administrative in nature. They are described as follows:

1. Serves the Principal Deputy and the Assistant Secretary of the Air Force (Manpower and Reserve Affairs), and the Secretary of the Air Force as the Deputy for Air Force Review Boards. Incumbent is responsible for the administration

of the Air Force Board for Correction of Military Records. In accordance with official delegation of authority, incumbent renders final decisions for and in the name of the Assistant Secretary of the Air Force (M) and the Secretary of the Air Force in the above functional area.

2. Insures that the general policies of the Assistant Secretary and through him the administrative progress relating to due process, clemency, recognition, affirmative action, discharge review and maximum utilization of military personnel are fully supported in the day-to-day operations of the various boards and actions of the supporting staff. This position is being established to reflect a broadening in scope in the areas of due process, clemency, discharge review and other personnel policy revisions which are the result of Presidential/Administration initiatives to correct error or injustices.

With regard to correction of military records, the position description lists six areas of responsibility of the Deputy AFRB, three of which are:

(1) advising the Principal Deputy and Assistant Secretary of the Air Force on all policy questions arising from the complex and diverse situations inherent in the administration of authority delegated to the Secretary of the Air Force under Section 207 of the Legislative Reorganization Act; (2) development and revision of broad policies, procedures, regulations, etc., pertaining to the administration and operation of the AFBCMR; and (3) reviewing all cases acted upon by the Board, insuring the fair and impartial adjudication of each case, involving careful consideration, application and exhaustive analysis of all pertinent evidence, facts, and circumstances, including all laws, regulations, and other criteria in effect at the time action contended was taken, or as retroactively changed. With respect to No. 3, the position description states the Deputy AFRB "acts on most recommendations of the Board ... without further referral to the Assistant Secretary of the Air Force (M)."

The section on controls over work states the Principal Deputy exercises broad policy guidance and general supervision over the Deputy AFRB.

Defendant argues the Secretary's authority to assign functions under 10 U.S.C. § 8013(f) has been implemented in accordance with the AFR 11–18 requirement that any special limitation must be stated in a SAFO. Since SAFO 100.1 contains no special limitation, defendant reasons, the delegation to Assistant Secretary (M) was plenary, and carried with it authority to redelegate the power to exercise the Secretary's discretion conferred in 10 U.S.C. § 1552(a), so that the Deputy AFRB was empowered to overrule the Board's April 24, 1990, decision and recommendations. Such an analysis makes administrative flexibility goals dominate the exercise of discretionary responsibility. The Secretary's discretion to correct an error or remove an injustice through the AFBCMR is inextricably intermixed with, and subordinated to, development of Board policies and its administrative procedures. The orderly sequence of events involved in the serviceman's claim that has proceeded through numerous command levels to culminate with a decision by a three man panel is interrupted, and reversed, by relegation to a single individual, a Department appointee in the career service. The Secretary's responsibility to correct error or to remove injustice through operations of a Board is turned on its head, and the Board he has established to exercise his discretion is demeaned.

Authority to overturn a decision of the AFBCMR involves a matter that is significant to the White House, to Congress, to the Air Force, and to the public interest. The Secretary's power to accept or reject a Board decision, however, has been lodged in a person who has not been appointed by the President with the advice and consent of the Senate. Such a delegation, if intended, must be made in specific, clearly expressed terms. Such delegation is not accomplished by the broad general and ambiguous assignments in SAFO 100.1 and the June 7, 1990, delegation to the Deputy

AFRB. In addition, there is a failure to comply with the provision of 10 U.S.C. § 8013(f) that requires a direction from the Secretary to authorize other officers in the Air Force to report on "any matter" to the Secretary, the Under Secretary, or any Assistant Secretary.

The statutes confer complete authority to the Secretary to delegate responsibility for functions to the Under Secretary and the Assistant Secretaries, and those officials have comparable authority within their areas of responsibility. The power of the Secretary to issue a directive that would give the Deputy AFRB authority to overrule the AFBCMR, or the power of the Assistant Secretary (M) to so authorize, is not at issue. Nor is the power of the Assistant Secretary (M) to delegate to the Deputy AFRB the many actions that are essential for effective administration of the AFBCMR, the AFCARA and the SAF/MIC. What is at issue, however, is the narrow question of whether delegation to the Assistant Secretary (M) of the authority "to act on all matters for which the Secretary is responsible," and the delegation of the Assistant Secretary to the Deputy AFRB "to take final action on my behalf" amount to a directive under 10 U.S.C. § 8013(f) on the facts of this particular case. An affirmative answer to this narrow question requires (1) the conclusion that the failure to include in SAFO 100.1 "special limitations or provisions" as described in AFR 11–18 amounts to a positive act, and (2) the conclusion that absence of any procedure or standard to guide the Deputy AFRB when a matter should be brought to "our attention for any reason" is specific authorization to overrule the findings of fact and recommendations of the AFBCMR in the name of the Secretary. Rationalization cannot be stretched so far.

Accordingly, the action of the Deputy AFRB on April 24, 1990, relative to the findings of fact and recommendations of the AFBCMR was unauthorized. The Board's decision therefore as to the correction of plaintiff's records stands.

Defendant would treat the actions involved in plaintiff's nonselection for reenlistment and discharge as matters "totally independent" of the actions involved in the Article 15 charge and punishment. Defendant's analysis creates an artificial separation that is contrary to the factual record. The AFBCMR, in both the June 1, 1989, and the April 24, 1990, decisions considered the AF Form 418 action and subsequent discharge under AFR 39–10 as related to the Article 15 charge and punishment. These matters were considered as constituting one factual nexus by the Deputy AFRB in his April 24, 1990, and June 20, 1990, Memoranda to the Executive Director AFBCMR. Throughout the AFBCMR proceedings there was general recognition that the only additional derogatory information at the time of the second nonselection for reenlistment was the Article 15 charge and punishment.

Consideration of plaintiff's condition that results from the Air Force action on his March 7, 1988, application to the AFBCMR is in order. Plaintiff has been allowed to reenlist and will be able to complete his 20 years for retirement. Until his discharge on April 28, 1988, he was paid in the grade of technical sergeant, and after he reenlisted on November 16, 1990, he was paid in that grade. His military records still contain the AF Form 418, dated February 11, 1988, the Article 15 punishment imposed on February 19, 1988, and the honorable discharge dated April 28, 1988.

The September 27, 1991, amended complaint in Count I, based on the alleged wrongful discharge on April 28, 1988, seeks back pay, accrued leave and seniority, and payment for medical, dental and optical services; Count II seeks compensation for emotional distress, embarrassment and tarnished reputation; Count III alleges the breach of contract for services and seeks consequential damages. The complaint asks for $250,000 compensatory damages, $1 million consequential and punitive damages, an award for future pay, allowances and benefits, and other relief.

 Under the Tucker Act, this court can award only monetary judgments and limited collateral relief as appropriate to complete the monetary judgment. *Austin*

*v. United States,* 206 Ct.Cl. 719, 723, 1975 WL 22844, *cert. denied,* 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975); *Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1007, 178 Ct.Cl. 599 (1967). Plaintiff's enlistment term when his claims arose was from December 20, 1984, through December 19, 1988, and any monetary claim must be for pay and allowances to which he is entitled during that period. Absent a statute that creates a right to reenlist, an enlisted man has no right to reenlist upon the expiration of his current enlistment period, and his entitlement to pay and other allowances ends at that time. *See Thompson v. United States,* 221 Ct.Cl. 983, 1979 WL 10425 (1979); *Austin,* 206 Ct.Cl. at 724, 1975 WL 22844; *McEniry v. United States,* 7 Cl.Ct. 622, 626 (1985).

No statute or regulation gives plaintiff a right to reenlist. Air Force policy declares that reenlistment is "an honor and a privilege, not a guaranteed right or entitlement." AFR 35–16, ¶ 6–1. *See Anderson v. United States,* 22 Cl.Ct. 178, 181–82 (1990). Accordingly, plaintiff has no claim for pay and allowances for the period December 19, 1988, through November 16, 1990.

Count II of the complaint sounds in tort. Such claims are specifically excluded from the Tucker Act. 28 U.S.C. § 1491(a). *Martin v. United States,* 230 Ct.Cl. 887, 889, 1982 WL 25260 (1982). It is well settled that this court may not award punitive damages against the United States. *Leesona Corp. v. United States,* 599 F.2d 958, 969, 220 Ct.Cl. 234, *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). Count III of the complaint alleges breach of contract and seeks compensation for consequential and compensatory damages. Military service is not governed by contract principles, absent specific authorization. A military member's right to pay and allowances is governed by statute and regulation. *Bell v. United States,* 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961). No statute mandates the payment of consequential damages in a military pay case. It is well settled that consequential damages are not recoverable

in this court. *Northern Helex Co. v. United States,* 524 F.2d 707, 720–21, 207 Ct.Cl. 862 (Ct.Cl.1975), *cert. denied,* 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 146 (1976).

On the basis of the foregoing, defendant's motion for summary judgment is allowed in part and denied in part. Plaintiff's cross-motion for summary judgment is allowed in part and denied in part. Plaintiff is entitled to pay and allowances during the period April 28, 1988, through December 19, 1988, and correction of his military records to show that

 a. AF Form 418, Selective Reenlistment/Noncommissioned Officer Status Consideration, dated 11 February 1988, is void and is removed from his records.

 b. The Article 15, initiated on 12 February 1988, with the punishment imposed on 19 February 1988, is void and is removed from his records, and all rights, privileges and property of which he may have been deprived are restored.

 c. Plaintiff was not honorably discharged on 28 April 1988, but on that date he was ordered PCS to his home of record pending further orders.

On or before 30 days from the date of this opinion, defendant shall file a memorandum that sets forth the amount plaintiff is entitled to recover for the period April 28, 1988, through December 19, 1988. An order for final judgment will be entered subsequently.