Michael D. MOEHL

v.

The UNITED STATES.

No. 91–1393C.

United States Court of Federal Claims.

Jan. 19, 1996.

Ronald P. Keller, Xenia, Ohio, attorney of record for plaintiff.

Franklin E. White, Jr., with whom was Assistant Attorney General Frank W. Hunger, for defendant. Lt. Col. Steven J. Pecinovsky, of counsel.

## OPINION

HARKINS, Senior Judge:

In this military pay case, Michael D. Moehl, an enlisted Air Force serviceman, challenges his discharge on April 28, 1988, as part of an early release program for strength reduction pursuant to AFR 39–10. Administrative proceedings relative to his claim ex-

tended from November 24, 1987, to June 20, 1990. Judicial proceedings on the claim, which started on October 30, 1990, in the District Court for the Southern District of Ohio, Western Division, have involved: the transfer of records which were received on August 28, 1991; a decision on August 30, 1993, on cross-motions for summary judgment, that the Deputy for Air Force Review Boards (AFRB) lacked authority to disapprove recommendations of the Air Force Board for Correction of Military Records (AFBCMR); a judgment on February 1, 1994, for plaintiff of $10,391.20 for pay and allowances, as well as correction of military records to show plaintiff was not discharged on April 28, 1988; and an appeal to the Federal Circuit, which on April 6, 1995, determined that the final action of the Deputy AFRB on June 20, 1990, was within delegated authority.

The Federal Circuit reversed and remanded for further proceedings on the legality of the Deputy AFRB's action, and whether plaintiff's entitlement to pay and benefits was justiciable. Pursuant to the mandate, a schedule for the parties to provide additional information and briefs that addressed these issues was established by order on June 5, 1995, which authorized an initial filing by each party and a response by each party. Defendant filed an initial statement and brief and a response; plaintiff filed only an initial statement and brief. The time for plaintiff to file a response expired October 17, 1995.

*Facts*

The record in this court contains the administrative record (AR) compiled by the AFBCMR for its April 24, 1990, decision, and additional administrative materials considered by the Deputy AFRB during the period April 24, 1990, to June 20, 1990. All facts material to plaintiff's claim were stipulated in the prior proceedings on defendant's November 26, 1991, motion, and plaintiff's September 11, 1992, cross-motion for summary judgment. A comprehensive chronology of significant factual events may be found in the August 30, 1993, opinion.[1] In the

interest of brevity, controlling facts are here identified and summarized; description of facts in detail may be found in the August 30, 1993, opinion.

Michael D. Moehl enlisted in the Air Force on July 7, 1972. He served a number of consecutive enlistment periods, the last one beginning on December 20, 1984, for a period of 4 years, ending December 19, 1988. He was discharged from the Air Force, with an honorable discharge, on April 28, 1988, as an early release in the Strength Reduction Program (SRP). Plaintiff fell within the program guidelines that required separation of all individuals with certain dates of separation who were ineligible for reenlistment. At the time of his discharge, he was in the grade of technical sergeant serving at Wright–Patterson Air Force Base, Ohio.

On November 24, 1987, plaintiff was nonselected for reenlistment or for retention beyond his current enlistment by his supervisor and unit commander. The supervisor cited erratic and declining performance requiring three counselings, a driving while intoxicated (DWI) offense in Korea, an off-base complaint, a mental health evaluation noting antisocial tendencies, poor work performance, substandard personal appearance, and unprofessional attitude. The unit commander noted his status in the Weight Management Program (WMP). Plaintiff appealed his nonselection and on January 22, 1988, plaintiff's appeal was approved by the base commander, the appeal authority.

On February 11, 1988, plaintiff was nonselected for reenlistment by his supervisor and his unit commander a second time. The supervisor repeated the remarks on the November 24, 1987, forms, and added "On 29 Jan 88, he was flagrantly disrespectful to another Major in the unit. I have contacted Headquarters Squadron Section Commander for appropriate action." The unit commander included comments on plaintiff's APR history as showing a highly erratic and inconsistent pattern of performance, references to DUI/DWI incidents in 1983, in Virginia, and in 1985 in Korea.

---

1. *Moehl v. United States*, 29 Fed.Cl. 249 (1993). The Apr. 6, 1995, decision, unpublished, of the Federal Circuit addresses the delegation issue and does not include an extensive statement of facts.

On February 12, 1988, plaintiff at 0930 was served with AF Form 3070 signed by his unit commander on February 12, 1988, giving notice that punishment under Article 15 for violation of Article 89 was under consideration for alleged misconduct. On February 18, 1988, plaintiff signed section 5 of AF Form 3070 and marked the form to show he had consulted a lawyer, that he waived right to demand a court martial and accepted nonjudicial punishment under Article 15, and that a written presentation was attached. Plaintiff was represented by AF Area Defense Counsel. On February 19, 1988, plaintiff's unit commander found plaintiff had committed the offense alleged and imposed as punishment: reduction to grade of Staff Sergeant and ordered to forfeit $100. The reduction in grade was suspended until August 18, 1988, at which time it would be remitted without further action. On February 25, 1988, plaintiff's appeal of the Article 15 punishment was denied by the appellate authority. The AF Form 3070 was signed by plaintiff's unit commander and plaintiff, and the Article 15 proceeding was concluded.

On June 1, 1989, the AFBCMR, in a 2 to 1 vote, denied plaintiff's application for correction of his military records. The application had been reviewed by the Air Staff; the Directorate of Personnel Program Management Reinstatement Program (DPMATR), the Social Actions Operations Division (DPMYS), and the Military Justice Division (AFJAJM), each of which had recommended denial. The Board's findings of facts included:

> Although he states counseling was recommended and says the Article 15 of 12 February 1988 was issued to solidify the denial of his reenlistment, we believe the imposition of the punishment was the prerogative of the commander based on sufficient reliable evidence. In addition, the JA review of the appeal concludes there is absolutely no evidence of bad faith or ill will behind this action.

On April 24, 1990, on reconsideration of the application for correction of military records, the AFBCMR, by a 2 to 1 majority concluded plaintiff's requests should be granted as indicated. The Board cited new evidence presented by plaintiff, and stated:

> We again note the following circumstances: That the officer who reported applicant evidently felt he should be counseled for unprofessional behavior; however, the commander whose previous denial of applicant's reenlistment had been overturned, imposed the Article 15 and used it as an additional issue in again denying reenlistment on 19 February 1988. Although such action was the commander's prerogative, it appears an overreaction to a relatively minor and isolated incident and the new evidence is convincing that there is reasonable doubt concerning the propriety of documentation used in the discharge action and gives the appearance of "gunning" for him.

> In view of the foregoing, we believe applicant should be given the benefit of the doubt and his records corrected to allow him to complete his 20 years for retirement.

On April 24, 1990, the Deputy AFRB, in a memorandum for the executive director of the AFBCMR, disagreed with, and overruled, the AFBCMR panel decision. The memorandum stated the nonselection for reenlistment did not constitute either an error or an injustice. He disagreed with the panel's acceptance: (1) that individuals in the chain of command maintained records well beyond the presented regulatory cutoff period and misused other documents to justify the nonselection, and (2) that the nonjudicial punishment was an overreaction, with the implicit conclusion that plaintiff was a victim of a personal vendetta.

The memorandum links the Article 15 nonjudicial punishment to the nonselection for reenlistment, and also uses it as a basis for denial of reinstatement to active duty. The alleged failure to show a basis for reinstatement, however, was not sufficient to bar reenlistment. The Deputy AFRB noted that the original nonselection for reenlistment was overturned by the base commander and that it was reasonable to assume the base commander did not believe the applicant's overall record justified such drastic action at

that time. The memorandum, in this regard, includes the following:

... Accepting this line of reasoning, the only additional derogatory information at the time of the second nonselection for reenlistment was the incident of disrespect to a senior officer which was disposed of by nonjudicial punishment. Since nonjudicial punishment is a corrective tool at the disposal of the commander, I do not believe it should, in and of itself, serve to bar the applicant's enlistment if his skills are required....

Accordingly, I have directed his reenlistment eligibility code be changed to 1J.

On June 7, 1990, the Assistant Secretary (Manpower, Reserve Affairs, Installations and Environment) pursuant to SAFO 100.1 delegated to the Deputy AFRB "the authority to take final action on my behalf on cases and other matters pertaining to" the AFBCMR. The delegation contained instructions.

On June 20, 1990, the Deputy AFRB, in a memorandum to the AFBCMR's Executive Director, after review of additional information, stated he still found the evidence was insufficient to conclude that the denial of reenlistment constituted either an error or an injustice. The memorandum includes the following:

Notwithstanding the above, after carefully weighing all the evidence in this case, collectively, and in consideration of the most recent statement from an officer in the applicant's former organization, a degree of doubt has been raised whether or not he was serving in an environment that was conducive to his being fairly treated. In this respect, I note this officer stated that prior to the applicant's arrival, rumors were circulating through the unit that applicant was a "problem child"; and that the immediate supervisor that recommended against his reenlistment was chosen as the officer to straighten the applicant out. He concedes that he is only speculating; nonetheless, this officer is convinced the applicant was fingered from day one and singled out for whatever reason for removal

from the Air Force because of pressure from higher authority....

Therefore, it is my decision that the benefit of the doubt be resolved in favor of the applicant by permitting him to reenlist in the Regular Air Force provided he is physically and morally qualified.

Plaintiff was permitted to reenlist on November 16, 1990, in the grade of technical sergeant. He was separated from the Air Force on June 8, 1994.

*Disposition*

The September 27, 1991, amended complaint in Count I, based on the alleged wrongful discharge on April 28, 1988, seeks back pay, accrued leave and seniority, and payment for medical, dental and optical services; Count II seeks compensation for emotional distress, embarrassment and tarnished reputation; Count III alleges the breach of contract for services and seeks consequential damages. The complaint asks for $250,000 compensatory damages, $1 million consequential and punitive damages, an award for future pay, allowances and benefits, and other relief.

At the time the amended complaint was filed, plaintiff had been permitted to reenlist. Count I included a claim for compensatory damages for the period he was out of the service, from the date of his discharge to the time he was allowed to reenlist—April 28, 1988, to November 16, 1990. That part of the claim for compensation in Count I applicable to the period between the end of his enlistment on December 19, 1988, to November 16, 1990, was denied in the August 30, 1993, decision. The claims for damages in Counts II and III for various alleged torts and breach of contract also were denied.[2] The February 7, 1994, judgment, which allowed $10,391.20 for pay and allowances under Count I, was limited to the period April 28, 1988, through December 19, 1988, and to correction of plaintiff's military records as recommended by the AFBCMR.

In its April 6, 1995, decision, the Federal Circuit ruled that the June 7, 1990, written delegation of authority to the Deputy AFRB was not ambiguous, that the Deputy's final

---

2. *Moehl,* 29 Fed.Cl. at 260.

action on June 20, 1990, on reconsideration, was within the authority delegated, and reversed summary judgment on the issue of the Deputy AFRB's authority to disapprove the AFBCMR April 24, 1990, recommendation. The Federal Circuit declined to rule on the issues of whether the action of the Deputy AFRB was arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence, or whether plaintiff's entitlement to pay and benefits is not justiciable under the rule of *Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.1993). In order to establish the position of the parties on the issues to be resolved on remand, the parties were directed on June 5, 1995, to file a statement and brief.[3] The order identified nine subjects to be addressed.[4]

 In their responses to the June 5, 1995, order, defendant renewed its November 26, 1991, motion to dismiss under RCFC 12(b)(4), failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment pursuant to RCFC 56.1, and plaintiff renewed its September 11, 1992, cross-motion for summary judgment. Defendant contends that the claim for damages for the period April 28, 1988, through December 19, 1988, resulting in plaintiff's nonselection for reenlistment should be dismissed pursuant to RCFC 12(b)(4) as nonjusticiable. Dismissal on the pleadings is a drastic procedure that should be used sparingly.[5] A complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[6] A military pay case is justiciable on the issue of compliance with applicable regulations. A challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy.[7] The record before the court contains materials outside the pleadings that are not excluded by the court. RCFC 12(b)(4) requires that defendant's renewed motion to dismiss be treated as one for summary judgment.

 The scope of whether a particular controversy is justiciable or nonjusticiable in military pay cases has been reexamined and defined by the Federal Circuit in 1990 in *Sargisson,* in 1993 in *Murphy,* and in 1995 in *Adkins.* A justiciable controversy is one where a court can judicially identify the duty asserted, judicially determine a breach of that duty and judicially mold an adequate remedy. *Baker v. Carr,* 369 U.S. 186, 198, 82

3. The June 5, 1995, order stated defendant's Nov. 26, 1991, motion was argued on Feb. 4, 1993. Oral argument, which had been scheduled for Feb. 4, 1993, was cancelled at plaintiff's request on Feb. 3, 1993. Oral argument was waived by the parties on Feb. 17, 1993, on plaintiff's unopposed motion. *See Moehl,* 29 Fed.Cl. at 250.

4. (a) Is the record complete as to facts relevant to plaintiff's claims during the period April 24 to June 20, 1990? Are there any material facts in dispute that would prevent this case from going forward on summary judgment procedures?

(b) What was the basis for Mr. Lineberger's decision not to follow the AFBCMR recommendation for correction of the pertinent military records, and to direct plaintiff's reinstatement eligibility code be changed to 1J?

(c) Was the decision to overrule the AFBCMR a de novo review of the record before the Board?

(d) Identify any regulation or other standard that applies to Mr. Lineberger's recommendation of his April 24, 1990, decision.

(e) When was the memorandum (see AR [Administrative Record] 13) for the Chief of Staff on AR 13 issued? How long were its terms effective?

(f) When was the Corrected Directive (see AR 12) drafted? What facts are involved in the decision to authorize enlistment "within 150 days" rather than "within 120 days" of the date of this memorandum?

(g) Was Mr. Lineberger's June 20, 1990, decision on reconsideration arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence?

(h) Discuss the presumption of regularity in federal employee conduct of government affairs as it applies to the April 24, 1990, decision of the AFBCMR members, and to Mr. Lineberger's decision on April 24, 1990.

(i) Compare the rule of justiciability on the facts of this case in *Sargisson v. United States,* 913 F.2d 918 (Fed.Cir.1990) with the rule in *Murphy v. United States,* 993 F.2d 871 (Fed.Cir. 1993).

5. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

6. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

7. *Adkins v. United States,* 68 F.3d 1317, 1323 (Fed.Cir.1995).

S.Ct. 691, 699–700, 7 L.Ed.2d 663 (1962). All courts agree that the merits of a service secretary's decision regarding military affairs are beyond the competence of the judiciary to review. Although the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy. *Sargisson,* 913 F.2d at 921; *Murphy,* 993 F.2d at 873; *Adkins,* 68 F.3d at 1325. When procedural violations are involved, the tests or standards against which the court measures the military's conduct are the applicable statutes and regulations. In such examination, the court does not exercise the discretion reserved for the military, it merely determines whether the facts show compliance with required procedures. *Murphy,* 993 F.2d at 873.

In this case, plaintiff does not ask the court to overrule any military discretionary conclusions drawn by the Deputy AFRB or by the AFBCMR. Plaintiff seeks to review the decision not to follow the AFBCMR's recommendation to reinstate plaintiff. Although a secretary may overrule a corrections board, it cannot be done arbitrarily. The action must have a basis in stated policy or on the evidence in the AR. Plaintiff has challenged the procedural aspects of the secretary's decision based on alleged failure to comply with statutory and regulatory standards. On this basis, plaintiff's claim is justiciable.

The AR contains two documents signed by the Deputy AFRB that are captioned: "MEMORANDUM FOR THE CHIEF OF STAFF." One document is dated "June 20, 1990"; the other document, dated "20 June 1990", is marked "CORRECTED DIRECTIVE." In this analysis, these documents are identified as the June 20, 1990, Directive and the Corrected Directive.

The time of drafting, issuance, and time effective of the June 20, 1990, Directive and the Corrected Directive, are not clear on the record. Plaintiff did not address the issues and accepted defendant's explanation. Defendant suggests that only the Corrected Directive is a part of the AR; that the June 20, 1990, Directive was erroneously placed in the AR; and that there is no evidence that it was ever issued.

Analysis of the administrative record indicates the June 20, 1990, Directive and the Corrected Directive were drafted and distributed at different times. On April 24, 1990, the Chief Examiner, AFBCMR, notified plaintiff of the board's recommendation and attached a copy of a memorandum for the Chief of Staff signed by the Deputy AFRB dated April 24, 1990, which directed Michael D. Moehl's AF records to be corrected "to show that the Reenlistment Eligibility (RE) code issued in conjunction with his honorable discharge on 28 April 1988 was RE–1J." The Chief Examiner advised plaintiff that, because of the claims work load, he should expect some delay.

On June 20, 1990, the Technical Advisor, AFBCMR, notified plaintiff the board had further corrected his military records "to permit your enlistment in the Regular Air Force within a specified period *provided you are physically and morally qualified.*" (Emphasis supplied). The Technical Advisor's letter showed two attachments: (1) Copy of memo to AFBCMR dated 20 June 1990, and (2) copy of memo to Chief of Staff, dated June 20, 1990. The June 20, 1990, Directive provides:

> The pertinent military records of the Department of the Air Force relating to MICHAEL D. MOEHL, 291–54–6035, be corrected to show that he is authorized to enlist in the Regular Air Force within *120 days* of the date of this memorandum as an exception to policy *provided he is physically and morally qualified.* (Emphasis supplied.)

On October 17, 1990, Representative Hall, requested the Air Force Secretary to authorize the Judge Advocate General's office to review the denial of plaintiff's reenlistment. The administrative record does not establish with precision the date on which reenlistment was denied. The October 17, 1990, request attached a copy of the Deputy AFRB's June 20, 1990, memorandum to the Executive Director AFBCMR, which decided that plaintiff should be given the benefit of the doubt and permitted "to reenlist in the Regular Air

Force *provided he is physically and morally qualified.*" (Emphasis supplied.)

On October 26, 1990, the Deputy AFRB was requested by the Secretary's Office to assist in clarifying his decision regarding plaintiff. The request states:

Based on your memorandum (Atch 1) the Air Staff directed Headquarters USAF Recruiting Service to contact Mr. Moehl to assist him in enlisting in the Air Force. During his enlistment processing, the Cincinnati, Ohio Military Entrance Processing Station discovered Mr. Moehl had two DUI offenses while he was on active duty. Consequently, they determined Mr. Moehl was not eligible for enlistment using current standards.

As a result of the denial, Representative Hall sent the Air Force a letter suggesting the Air Force applied the wrong regulations to Mr. Moehl (Atch 2). Representative Hall uses your Memorandum for the Executive Director, Air Force Board for Correction of Military Records (Atch 3), to support his case. In that memorandum, you use the word "reenlist" versus enlist in your last paragraph.

Attachment 1 was the Corrected Directive of the Deputy AFRB.[8] The Corrected Directive provides:

The pertinent military records of the Department of the Air Force relating to MICHAEL D. MOEHL, 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, be corrected to show that he is authorized to enlist in the Regular Air Force within *150 days* of the date of this memorandum *as an exception to policy.* (Emphasis supplied.)

The Secretary's Office advised the Technical Advisor AFBCMR that "Moehl is eligible to enlist per corrected directive."

Facially, the June 20, 1990, Directive differs from the Corrected Directive in the number of days authorized for plaintiff's enlistment, and the deletion of the restriction on the "exception to policy" basis. These differences in the documents relative to the June 20, 1990, decision by the Deputy AFRB, do not raise facts sufficient to establish noncompliance with required procedures or violation of controlling regulation. These differences do not present material issues of fact that would preclude disposition of plaintiff's claim by summary judgment procedures.

The recommendation of the AFBCMR that plaintiff's records be corrected to show he was not discharged on April 29, 1988, was rejected by the Deputy AFRB on April 24, 1990. The rejection was repeated on June 20, 1990, after reconsideration. On April 28, 1988, there was no delegation of authority in writing to support the Deputy's action. This deficiency was repaired by SAFO 100.1 § 6, issued May 1, 1990, and the specific delegation by the Assistant Secretary on June 7, 1990, pursuant to SAFO 100.1.[9]

SAFO 100.1 § 6 is an unlimited delegation to the Assistant Secretary to exercise the authority in all matters pertaining to formulation, review and execution of plans, policies, programs and budgets (PPBS) for the AFBCMR. The delegation encompasses exercise of discretion to accept or reject corrections board recommendations in a particular case. The June 7, 1990, delegation conferred on the Deputy AFRB the power to take final action on Board cases. The final administrative action on plaintiff's claim was taken on June 20, 1990.

■ It is well-settled that the Secretary of the Air Force has "retained the authority to take such final action on board recommendations as he determines to be appropriate." *Boyd v. United States,* 207 Ct.Cl. 1, 8 (1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976). *See also* 32 C.F.R. § 865.21 (1989) (recommendations ... will be forwarded to the Secretary ... or his designee who will direct such action in each case *as he or she determines to be appropriate* )

---

8. Attachment 2 was the Oct. 17, 1990, request of Representative Hall to the Office of the Secretary, Air Force Department. Attachment 3 was Deputy AFRB's memorandum to the Executive Director, AFBCMR, dated June 20, 1990.

9. The position description for the Deputy AFRB became final on Nov. 13, 1987. A position description is not a vehicle in the delegation of the Secretary's authority and discretion. Delegations or assignments of statutory authority are accomplished by Secretary of the Air Force Orders (SAFOs). AFR 11-18.

(emphasis added); *Gottlieb v. Pena,* 41 F.3d 730, 736 n. 8 (D.C.Cir.1994); *Miller v. Lehman,* 801 F.2d 492, 497 (D.C.Cir.1986). This includes the discretion to differ with a board's recommendations where the evidence is susceptible of varying interpretations. *Sanders v. United States,* 594 F.2d 804, 812, 219 Ct.Cl. 285 (1979) (citing *Boyd,* 207 Ct.Cl. at 11). However, this discretion does not permit the Secretary to arbitrarily refuse to follow the fact findings of the correction board where all the evidence supports the board's findings. *See Hertzog v. United States,* 167 Ct.Cl. 377 (1964); *Betts v. United States,* 145 Ct.Cl. 530, 172 F.Supp. 450 (1959); *Proper v. United States,* 139 Ct.Cl. 511, 154 F.Supp. 317 (1957).

In *Boyd,* the Court of Claims recognized that:

> The Court ... may reject the decision of a Secretary *only* if he has exercised his discretion arbitrarily, capriciously, in bad faith, contrary to substantial evidence, or where he has gone outside the board record, or fails to explain his actions, or violates applicable law or regulations....

*Boyd,* 207 Ct.Cl. at 8–9 (Emphasis added).

■ Review of a secretary's decision by this court is limited in nature. The secretary's decision is final unless it can be shown by clear and convincing evidence to be arbitrary, capricious, in bad faith or contrary to all evidence. *Boyd,* 207 Ct.Cl. at 8–9; *see also, Betts,* 172 F.Supp. at 453. The "Secretary's discretion is not to be interfered with lightly," since courts have little military expertise and have traditionally refrained from involving themselves in the internal affairs of the military. *Boyd,* 207 Ct.Cl at 9. Therefore where reasonable minds could disagree, this court cannot substitute its judgment for that of the secretary. *See Sanders,* 594 F.2d at 814.

■ When a secretary does overrule a board's recommendation, besides having to do so within the foregoing standards, he must explain his actions and not violate any applicable law or regulation. *Boyd,* 207 Ct. Cl. at 8–9. Should the secretary fail to explain his decision, his action will be upheld on review if it is supported by the record and evidence presented to the board. *See Hertzog,* 167 Ct.Cl. at 377. Should a challenging party satisfy the heavy burden placed upon him, then this court must overrule the secretary's decision. *See Sanders,* 594 F.2d at 811. The secretary's decision is a de novo consideration of the entire record. Simply because a reasonable basis exists in the AR that would support the board's decision is not sufficient to establish the secretary's rejection of the board's recommendation was arbitrary. A court does not sit as a super correction board, *Skinner v. United States,* 594 F.2d 824, 829–30, 219 Ct.Cl. 322 (1979), where reasonable minds might reach differing conclusions, a court will not substitute its judgment for that of a military agency, especially when the agency is considering the suitability of an individual to be a military officer. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Sanders,* 594 F.2d at 814.

■ This Court is limited to determining whether that decision was arbitrary or capricious, contrary to law or regulation, or unsupported by substantial evidence. *Morrow v. United States,* 647 F.2d 1099, 1102, 227 Ct.Cl. 290 (Ct.Cl.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 247 (1981); *Sanders,* 594 F.2d at 811. To prevail, plaintiff must "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders,* 594 F.2d at 813. To rebut that presumption, plaintiff is required to establish through "cogent and clearly convincing evidence" that the decision of the Deputy AFRB was arbitrary and capricious, unsupported by substantial evidence, or contrary to law or regulations. *Cooper v. United States,* 203 Ct.Cl. 300, 304 (1973). "The task of the reviewing court is to apply the appropriate ... standard of review ... to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1606–07, 84 L.Ed.2d 643 (1985).

■ Application of these standards to plaintiff's claim requires the Deputy's deci-

sion be upheld. The Deputy considered plaintiff's case twice and on both occasions rejected the recommendation to reinstate plaintiff. On both occasions, the Deputy explained his actions, in memos dated April 24, 1990, and June 20, 1990.

The Deputy rejected the recommendation that plaintiff's nonselection constituted an error or an injustice. The Deputy considered the entire record before making a decision. His decision was based on the totality of evidence submitted. His decision reflects reliance on the evaluation of the unit commander who nonselected plaintiff, a man seen to have had the greatest opportunity to observe plaintiff's overall performance.

The Deputy also considered the use of information from prior enlistment periods and the controversial military records used in Plaintiff's nonselection and found their use to be appropriate. The SRP regulations, the Deputy felt, envisioned that commanders use an enlisted man's entire profile in order to make the best decision regarding retention in the Air Force. Defendant cites an advisory opinion by the AFMPC which held that "the documentation maintained by ASD/CCQ and all documentation used to support [plaintiff's] denial of reenlistment were found to be appropriate and correct." It refutes many of plaintiff's contentions. Clearly, acceptance of this explanation over plaintiff's allegations was within the authority delegated to the Deputy AFRB.

The Deputy disagreed with the board's view that the nonjudicial punishment was an overreaction. The Deputy reasoned that this was a discretionary call on the part of the unit commander and accepted that decision on the basis of applicable standards.

The initial decision of the AFBCMR was a 2–1 decision to deny correction of records to permit reinstatement. Only after reconsideration and review did the board rule in favor of plaintiff, again by a 2–1 margin. This case is not one in which the secretary overrules a unanimous board and goes against the weight of evidence. Rejection of the board's view of the new evidence was within the authority delegated to the Deputy AFRB.

On the basis of the foregoing, defendant's motion for summary judgment is allowed; plaintiff's cross-motion for summary judgment is denied. Judgment for defendant; the Clerk is directed to dismiss the complaint. No costs.