S.A.F.E. EXPORT
CORPORATION, Appellant,

v.

The UNITED STATES, Appellee.

Appeal No. 86–866.

United States Court of Appeals,
Federal Circuit.

Oct. 14, 1986.

Sarah E. Longson, Schlachman, Potler, Belsky & Weiner, P.A., Baltimore, Md., argued for appellant. B. Marvin Potler, Schlachman, Potler, Belsky & Weiner, P.A., Baltimore, Md., was on the brief for appellant.

Stuart James, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen. Major Raymond C. McCann, Dept. of the Army, of counsel.

Before NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and ARCHER, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

S.A.F.E. Export Corporation ("S.A.F.E.") appeals, pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–13, the decision of the Armed Services Board of Contract Appeals ("Board") denying its claim for damages in the amount of $11,658 for incurred extra costs. *S.A.F.E. Export Corp. v. United States*, 85–2 B.C.A. (CCH) ¶ 18,138, *aff'd on reconsideration*, 85–3 B.C.A. (CCH) ¶ 18,404 (1985). We affirm the decision of the Board.

### Background

The detailed background is described in the Board's decisions. In brief, S.A.F.E. was awarded a contract by the U.S. Army Contracting Agency, Europe, to provide monthly maintenance and inspection services of certain alarm systems at sites within the Frankfurt Military Community for the period from October 15, 1983 to October 14, 1984. Entry passes were required at these installations, and pursuant to the contract S.A.F.E. requested passes for the two people it designated to perform the contract: Edward J.P. Tierney, president (and owner, with his wife) of S.A.F.E., and Rosario Stipanov, an independent contractor (according to S.A.F.E.) or employee of S.A.F.E. (according to the government)—the difference is not here material.

The pass for Mr. Tierney was denied in November of 1983, shortly after Mr. Tierney and Mr. Stipanov had conducted the first inspection in performance of the contract. Mr. Stipanov completed performance without Mr. Tierney's participation, at an asserted increased contract cost to S.A.F.E. of $11,658.

The ground for the denial of access to Mr. Tierney was an event that occurred in 1977. As found by the Board, Mr. Tierney admitted that he had used U.S. Government forms "to obtain the duty and tax free entry of goods imported into the Federal Republic of Germany and destined for use on U.S. Government projects, and used them to cover imported items when neither he nor his company had been awarded contracts on which the imported items could be used". 85–2 B.C.A. (CCH) at 91,046–47. The German authorities had taxed Mr. Tierney 5,000 Deutsche Marks as turnover tax and customs duties on the items improperly imported. The German authorities had also filed criminal charges against Mr. Tierney, and on January 17, 1983 the German District Court found Mr. Tierney guilty of the criminal offense of procuring false documents by means of false representation, thereby violating German tax regulations, and imposed a fine of 400 Deutsche Marks.

Before the Board S.A.F.E. contested the government's reliance on this conviction as justification for denying Mr. Tierney entry to the military installations, for the reason that the German appellate court had discontinued proceedings on January 12, 1984 with the consent of the prosecutor and the defendant. S.A.F.E. asserted that this discontinuance should be construed, as a matter of German law, as meaning that Mr. Tierney was innocent of the charge. The Board, based on expert testimony of German legal practice, found that such appellate actions are taken when the matter is not of great public interest and the guilt is in any event minor. The Board found that "[t]his action by the appellate court was neither a pronouncement of innocence nor a confirmation of the guilt found by the lower court's conviction of Mr. Tierney." *Id.* at 91,050. The Board agreed with Mr. Tierney that the conviction thus never became final. The Board nevertheless held that Mr. Tierney's admission that he had falsified customs documents was sufficient evidence of untrustworthiness to support the military's decision to exclude Mr. Tierney from sensitive areas.

S.A.F.E. argued that the military authorities were required to reimburse S.A.F.E. for its additional personnel costs incurred in performance of the contract. The Board denied the claim, holding "that the action of the Government in denying an installation pass to Mr. Tierney was reasonable

under the circumstances and was thus neither arbitrary nor capricious", *Id.* at 91,054, from which it concluded that the government was not liable to S.A.F.E. for damages.

On appeal to this court, S.A.F.E. argues that the government's denial of entry to Mr. Tierney was contrary to due process of law; that there was no reasonable relationship or nexus between the facts as found and the denial of the pass; and that the government's denial of the pass required it to terminate the contract and settle with S.A.F.E.

### A.

S.A.F.E. asserts that because Mr. Tierney was denied the pass without notice and opportunity to refute the charges, both S.A.F.E. and Mr. Tierney were denied due process in violation of the Fifth Amendment. S.A.F.E. observes that "a corporation is a 'person' within the meaning of the equal protection and due process of law clauses", *Grosjean v. American Press Co., Inc.,* 297 U.S. 233, 244, 56 S.Ct. 444, 446, 80 L.Ed. 660 (1936), and that S.A.F.E. is entitled to the protections of the Fifth Amendment.

S.A.F.E. relies on *Old Dominion Dairy Products, Inc. v. Secretary of Defense,* 631 F.2d 953 (D.C.Cir.1980) and *Related Industries, Inc. v. United States,* 2 Cl.Ct. 517 (1983), which courts held that the government violated a contractor's liberty right when it barred or rejected the contractor's bids on the basis of an asserted lack of integrity, without affording to the contractor prior notice and an opportunity to refute the charge. S.A.F.E. maintains that it and Mr. Tierney were "stigmatized" by the government's refusal to issue the pass.

■ Although a governmental authority may not act in a way that so injures a person's reputation that future employment or business opportunities will be foreclosed, without notice of the charges and an opportunity for the person's name to be cleared, *see Arnett v. Kennedy,* 416 U.S. 134, 156–58, 94 S.Ct. 1633, 1645–46, 40 L.Ed.2d 15 (1974); *Board of Regents v.*

*Roth,* 408 U.S. 564, 572–75, 92 S.Ct. 2701, 2706–08, 33 L.Ed.2d 548 (1972), Mr. Tierney is not a party to this action, and his asserted deprivation of a liberty interest is pertinent only to the extent that this deprivation, if wrongful, affected S.A.F.E.'s rights and obligations as a contractor. Unlike the contractors in *Old Dominion Diary Products* and *Related Industries,* S.A.F.E. was not prevented by governmental action from receiving or performing this contract. The only issue of due process fairly raised, in this action for damages measured by increased costs of performance, is whether S.A.F.E. was deprived of any interest of constitutional dimension by virtue of the exclusion of its president from personal performance.

■ S.A.F.E. does not contest the Board's finding that this was not a personal service contract dependent on Mr. Tierney. The Board found that "[t]he contract did not provide any specific authority for Mr. Tierney personally to do the work and does not indicate any evidence that either party contemplated personal services being performed by Mr. Tierney." 85–2 B.C.A. (CCH) at 91,048. Whether or not S.A.F.E.'s expected return was affected because of the need to employ Mr. Stipanov to perform the entire contract does not, on the facts of this case, constitute deprivation of a liberty or property interest in violation of the Fifth Amendment.

### B.

S.A.F.E. asserts that the government, having arbitrarily excluded Mr. Tierney and thus inhibited S.A.F.E.'s performance of the contract, is liable in damages for incurred extra costs of performance. The Board held that the exclusion was not an abuse of the agency's discretion.

■ S.A.F.E. does not dispute that Mr. Tierney had no absolute right of access to the military installations. The military command has broad discretion to admit contractors' employees or to exclude them, provided only that such exclusion is not arbitrary or discriminatory. As the Court

stated in *Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy*, 367 U.S. 886, 898, 81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230 (1961), the employee of the contractor "could not constitutionally have been excluded from [the military installation] if the announced grounds for her exclusion had been patently arbitrary or discriminatory—that she could not have been kept out because she is a Democrat or a Methodist."

In accord with this precedent, the Board held that "the judgment of those responsible for the granting of passes to enter military installations and particularly to enter sensitive areas of those installations should not be disturbed absent a clear abuse of discretion." 85–2 B.C.A. (CCH) at 91,053. There was substantial evidence to support the Board's finding that there was a reasonable basis for the government's refusal to admit to Mr. Tierney. The contract was for the maintenance and inspection of security alarm systems, including those placed in arms storage rooms. *Id.* In addition to the proceedings in the German courts, the Board relied on Mr. Tierney's admission that he had falsified customs documents, *id.* at 91,051, and on an investigation by the 42nd Military Police Group and report to the Commander, U.S. Military Community Frankfurt. *Id.* at 91,-046–47.

■ We affirm the Board's holding that the government did not act in an arbitrary manner or abuse its discretion in refusing access to sensitive areas to Mr. Tierney. *See Kumferman v. Department of the Navy*, 785 F.2d 286, 291 (Fed.Cir.1986) (nexus established between acts of falsifying records and unauthorized possession of government property, and the efficiency of the service).

S.A.F.E. argues that the government is nevertheless liable for the consequences of this action. As stated by the Board, "[a]n implied condition of every contract is that one contracting party will not hinder or interfere with the performance of the other contracting party." 85–2 B.C.A. (CCH) at 91,053. The Board stated:

If the post, base or station commander wishes to exercise some authority over the contractor's right to access and elects to bar access the contracting officer, if he/she chooses not to fight for the right of access under the contract, has the *obligation to terminate for the convenience of the Government* the contractor's right to proceed with contract performance. Under those circumstances, the U.S. Government must face up to its termination settlement responsibilities.

*Id.* (emphasis added). The contracting officer did not "fight for the right of [Tierney's] access", but neither did he terminate the contract for the convenience of the government.

The Board analyzed this obligation in the context of S.A.F.E.'s undertaking by contract "to utilize only experienced, responsible and capable people in the performance of the work." *Id.* at 91,048. The Board referred in its findings to the provision that "[t]he Contracting Officer may require that the contractor remove from the Government's job employees who endanger persons or property, or whose continued employment under this contract is inconsistent with the interest of military security". *Id.* Thus the Board found implicit in the requirement that "the U.S. Government face up to its termination settlement responsibilities" the limitation that "the contracting party who will be entering onto the premises of the other contracting party must use personnel who are trustworthy." *Id.* at 91,053.

■ A contractor's employee is not subject to the same procedural safeguards as are provided under the Civil Service Reform Act. The exclusion of a contractor's employee is reviewed only on the limited basis set forth in *Cafeteria & Restaurant Workers*, as discussed *supra*. The government's action was not in violation of its contract with S.A.F.E., as the Board correctly held. The government's refusal to issue an entry pass to Mr. Tierney was not such an interference with S.A.F.E.'s performance, as contemplated by the contract terms, as would require the govern-

ment to have terminated the contract, or otherwise to have incurred liability in favor of S.A.F.E.

AFFIRMED.