James L. MURPHY, Plaintiff–Appellee,

v.

The UNITED STATES, Defendant–
Appellant.

No. 92–5086.

United States Court of Appeals,
Federal Circuit.

May 17, 1993.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
July 19, 1993.

Guy J. Ferrante, King & Everhard, P.C., Falls Church, VA, argued, for plaintiff-appellee.

John S. Groat, Attorney, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for defendant-appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief was Captain William R. Swanson, Department of the Air Force, of counsel.

Before RICH, MAYER and RADER, Circuit Judges.

MAYER, Circuit Judge.

The United States appeals the judgment of the United States Court of Federal Claims,[1] 16 Cl.Ct. 385 (1989), holding James L. Murphy, a retired Air Force reserve officer, was unlawfully released from active duty based on incorrect military records, and ordering reinstatement, back pay and correction of military records. We reverse.

*Background*

Murphy received a commission as an officer in the United States Air Force Reserve on June 1, 1959, and entered active duty as a second lieutenant in the Air Force Reserve on August 29, 1959. He remained on active duty until August 27, 1962, at which time he was voluntarily released to pursue a Master's

---

1. The Claims Court was renamed the Court of Federal Claims on October 29, 1992. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506 (1992).

degree. On November 17, 1962, he was appointed a first lieutenant in the Indiana Air National Guard. He returned to active duty as a reserve officer in the Air Force on July 18, 1967, and was promoted to permanent major on February 1, 1971.

At the end of the Vietnam War a Reserve Officer Screening Board (ROSB) was convened by the Secretary of the Air Force to select reserve officers for involuntary separation from active duty pursuant to 10 U.S.C. § 681(a) (1970), which says: "Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty." Under the authority of this statute and Air Force Regulation (AFR) 36–12 ¶ 71,[2] the Secretary issued a Letter of Instructions directing the ROSB to release the officers based on its review and overall ranking of their service records. Murphy was reviewed along with all other reserve officers serving on active duty in specified year groups with surplus officers, and was selected to be separated effective June 27, 1975.

On October 29, 1975, Murphy filed an application with the Air Force Board for Correction of Military Records (board), seeking correction of alleged errors in his military record and reinstatement to active duty. The board denied his application in its entirety, stating that he had not provided sufficient evidence to establish probable error or injustice. Murphy filed a second application on November 22, 1979; again the board declined to make changes to his military record or to reverse the ROSB's decision to discharge him. On review, the Claims Court held that there were errors in Murphy's personnel record and that the board's failure to correct them was arbitrary and capricious. It ordered that the record be corrected, and that Murphy be reinstated to active duty with pay retroactive to June 27, 1975.

## Discussion

Our initial inquiry is whether the Claims Court properly exercised its authority when it reached the merits of this case. Jurisdiction is proper under the Tucker Act, 28 U.S.C. § 1491(a)(1), which provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon ... any Act of Congress...." Murphy's claim is founded on 37 U.S.C. § 204(a)(1), which entitles an Air Force reserve officer on active duty to pay and allowances. Because he claims monetary relief, that he was entitled to compensation unless properly released from active duty, the Claims Court had jurisdiction.

■ However, the existence of jurisdiction does not confirm the court's ability to supply relief. Just as "[a] grant of *jurisdiction* to issue compliance orders hardly suggests an absolute duty to do so under all circumstances," *TVA v. Hill*, 437 U.S. 153, 193, 98 S.Ct. 2279, 2301, 57 L.Ed.2d 117 (1978) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944)), so too, here. The issue must also be justiciable; it must be within the competency of the court. Justiciability is distinct from jurisdiction; it depends on "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962). Justiciability is a particularly apt inquiry when one seeks review of military activities.

[J]udges are not given the task of running the Army. The responsibility for setting up channels through which [ ] grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). Aside from the limited warrant of courts to invade

---

**2.** AFR 36–12 ¶ 71 (June 28, 1973) governed the release of reserve officers from active duty due to strength reductions and called for the Secretary to "issue specific instructions governing the criteria and procedures to be utilized in effecting the reduction in strength."

the military province, intrusion also raises a separation of powers issue. Congress and the Executive have primary authority and responsibility over matters military. "We do not sit as a committee of review, nor are we vested with the power of veto." *TVA*, 437 U.S. at 194, 98 S.Ct. at 2302.

■ Accordingly, we have recognized that there are "thousands of [ ] routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with." *Voge v. United States*, 844 F.2d 776, 780 (Fed.Cir.1988) (and cases cited). We have emphasized that judicial review is only appropriate where the Secretary's discretion is limited, and Congress has established "tests and standards" against which the court can measure his conduct. *See Sargisson v. United States*, 913 F.2d 918, 922 (Fed.Cir.1990); *Voge*, 844 F.2d at 780. Unless such a test or standard is provided, courts must abstain.

■ When the military is given unlimited discretion by Congress, it is nevertheless bound to follow its own procedural regulations if it chooses to implement some. *Sargisson*, 913 F.2d at 921. But the utility of the distinction between procedural and substantive matters in assessing a court's ability to review military decisions should not be overemphasized. On procedural matters, the test or standard is inherent. A court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion. The court is not called upon to exercise any discretion reserved for the military, it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard.

Murphy asked the Claims Court to correct his military records, which he asserts were compiled in violation of Air Force regulations. Then he asked the court to review the merits of his release from active duty which was based on the allegedly erroneous records. Because the Claims Court's authority to grant equitable relief such as the correc-

tion of military records is premised on the award of monetary relief, 28 U.S.C. § 1491(a)(2),[3] the court must first assess the justiciability of the separation by determining what limits were placed on the Secretary's discretion to release a reserve officer from active duty. This is explicitly controlled by *Sargisson*, 913 F.2d 918. In that case, an Air Force reserve officer challenged his separation by the same ROSB which considered Murphy. Like Murphy, Sargisson also argued that the ROSB considered erroneous military records in making its decision, and sought reinstatement and back pay. We held the Claims Court could not review the board's decision because "the Secretary's compliance with AFR 36–12 ¶ 71 and the Letter of Instructions is beyond the ken of judicial competence; it is nonjusticiable." *Id.* at 921.

Murphy argues that there is a significant difference between his case and *Sargisson*, because there the board conceded that the records contained errors and made the appropriate corrections before reviewing the ROSB's release decision. Here, Murphy contends the errors in his records remain and the board's review therefore was not based on accurate records.

We disagree with his premise. While we do not consider the merits of the trial court's action, the possibility of erroneous records does not transform an otherwise nonjusticiable action into a reviewable one. After the Claims Court reviewed and purported to correct the records, any additional corrective action it devised was the result of nothing more than speculation that the ROSB decision would have been different. "A court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit." *Id.* at 922. The correction of allegedly erroneous records added nothing to the court's ability to second guess the military. There were still no tests or standards it could apply to determine whether the officer would have been released even on the court's version of the record.

---

**3.** "To provide an entire remedy and complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judg-

ment, issue orders directing ... correction of applicable records...." 28 U.S.C. § 1491(a)(2).

We acknowledged this dilemma in *Voge*, which held that the Navy's decision to terminate a medical officer's Additional Special Pay (ASP) was a purely discretionary matter and nonjusticiable. 844 F.2d at 780. We refused to countenance correction of alleged errors in the officer's records because "[b]y considering her service records for error in their 'preparation or content', the Claims Court was passing on the merits of the decision to deny ASP which was first and last for the Navy." *Id.* at 781. Even if we were to order remand of Murphy's case to the board for reconsideration based on corrected records, the trial court would be precluded from reviewing the board's new decision. Because the merits of the Air Force's decision to release Murphy from active duty are beyond judicial reach, so too is consideration of his military records.

Finally notwithstanding the language of 10 U.S.C. § 1552(a),[4] invocation of the rubric "injustice" provides no basis for judicial relief. There must be a "pure legal error." *Grieg v. United States*, 640 F.2d 1261, 1265, 226 Ct.Cl. 258 (1981). Section 1552(a) describes the Correction Boards' jurisdiction to act on behalf of the Secretary to "remove an injustice." It says absolutely nothing about the Claims Court's jurisdiction which is circumscribed solely by the Tucker Act, 28

U.S.C. § 1491, and which demands that the government be called upon to answer in money. Absent that, there is no review in the Claims Court of alleged "injustice."

Perhaps Murphy could have sought correction of his records through the Administrative Procedure Act in the district court. *See, e.g., Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1511 (D.C.Cir.1989) (Although "request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions," judicial review of decisions involving the correction of military records is available under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2)). But the Claims Court has no authority to invoke the APA.

### Conclusion

Accordingly, the judgment of the Court of Federal Claims is reversed.

REVERSED.

---

4. This section provides: "The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. Under procedures prescribed by him, the Secretary of Transportation may in the same manner correct any military record of the Coast Guard. Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States."