Terrence L. ADKINS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 93–87C.

United States Court of Federal Claims.

Oct. 22, 1993.

Reconsideration Denied Nov. 8, 1994.

Barry P. Steinberg, Washington, DC, for plaintiff.

John S. Groat, with whom were Acting Asst. Atty. Gen. Stuart E. Schiffer, David M. Cohen, and Jeanne E. Davidson, Washington, DC, for defendant; Captain W. Renn Gade, Dept. of the Army, of counsel.

## OPINION

BRUGGINK, Judge.

Plaintiff seeks to have set aside his retirement pursuant to 10 U.S.C. § 3911 (1988) and to be retroactively promoted to the rank of full colonel. Defendant filed a motion to dismiss for failure to state a claim, which the court converted to one for summary judgment.[1] After considering the filings and oral argument, the court concludes that although the retirement at issue was involuntary, it must refrain from resolving plaintiff's claim because it presents a non-justiciable political question.

---

1. Defendant initially filed a motion to dismiss for failure to state a claim. It assigned no particular rule number to its motion but defendant characterizes the issues as whether the court "possesses jurisdiction" to entertain the claim. There is no question that voluntary resignations have been characterized as putting the circumstances of a removal from the military beyond the court's jurisdiction. *See Sammt v. United States,* 780 F.2d 31 (Fed.Cir.1985). This is the primary element of defendant's motion to dismiss. Although materials beyond the pleadings were included in the motion papers, this fact would not in itself dictate conversion to a motion for summary judgment. Because the defendant also raises a question as to the court's authority to review promotion decisions, an issue that arguably is non-jurisdictional, *see Murphy v. United States,* 993 F.2d 871 (Fed.Cir.1993), the court informed the parties that it would treat the motion as one for summary judgment, and permitted reference at oral argument, or in additional filings, to the administrative record. The factual recitations are drawn from the complaint and the administrative record.

## FACTUAL BACKGROUND

Insofar as is necessary to address the motion, few facts need be considered. LTC Adkins had an exemplary career in the Army. He was selected for promotion to Colonel by the 1988 Colonel Army Promotion List. Unknown to the selection board, however, an investigation into Adkins' alleged falsification of Medical Flight Status had been initiated and completed prior to the selection. In addition, LTC Adkins' classified change of rater Officer Evaluation Report ("OER") for the period November 19, 1987 to May 1, 1988 contained negative comments about his ethics, judgment and command skills. He subsequently received a "relief for cause" OER covering the period May 2, 1988 to June 27, 1988 and was relieved of his command. Shortly thereafter, plaintiff was the subject of a second investigation relating to an accident with an aircraft. This report also contained negative information about plaintiff, and, like the first report, led to a letter of reprimand.

On December 12, 1988, after Senate confirmation of his promotion to the grade of Colonel, the Promotions Branch of the Army Personnel Command advised plaintiff that a Promotion Review Board ("PRB") would reconsider his promotion list status because the earlier selection for promotion had been made without knowledge of the negative OERs. When it met, the PRB apparently had before it those adverse OERs as well as the investigative reports. It recommended to the Secretary of the Army that LTC Adkins be removed from the Colonel Promotion List.

In the meantime, plaintiff had appealed the OERs, and an Officer Special Review Board removed the intermediate rater and senior rater portions of the first adverse OER and a redacted OER was substituted in his official military personnel file ("OMPF").

The Secretary deferred a decision on the first PRB's recommendation and directed that a new PRB consider his promotion status based on the redacted OER. He also directed the removal from his OMPF of the relief for cause OER on April 24, 1991. Subsequent considerations of plaintiff's appeals and his promotion thus did not include the relief for cause OER and only included the redacted change of rater OER.[2]

The new PRB was provided with a copy of two Army Regulation ("AR") 15-6 investigation reports that described the two incidents involving plaintiff. These were apparently never made part of LTC Adkins' OMPF. The new PRB recommended on June 26, 1991 that LTC Adkins be taken off the promotion list and on July 22, 1991 the Secretary did so.

LTC Adkins appealed the remaining adverse information in his file to the Army Board for Correction of Military Records ("ABCMR"). The ABCMR had before it the investigative reports, and took extensive testimony, much of which is unintelligible on the transcript or was redacted for security reasons. The board accepted plaintiff's argument that what remained of the change of rater OER in question was unfair and prejudicial.[3] It recommended to the Secretary that the change of rater OER be deleted from his OMPF, and that "all obstacles to his promotion to Colonel be removed."

Before the Secretary acted on this recommendation, the Deputy Chief of Staff for Personnel wrote LTC Adkins to inform him that he had been selected for mandatory early retirement as of August 31, 1992 under the provisions of 10 U.S.C. §§ 638 and 638a, and that he would be so retired if he did not voluntarily retire earlier. On March 25, 1992, while awaiting the Secretary's decision on the ABCMR recommendation, LTC Adkins submitted a request for "Voluntary Retirement" pursuant to AR 635-100, paragraph 4-13. As subsequently amended, the request was to retire effective July 31, 1992. Such retirements are authorized by 10 U.S.C. § 3911 "upon the officer's request."

---

2. The ABCMR relates that it had before it the truncated change of rater OER as well as the investigative reports. The court is unable to locate the first item in the official OMPF. The parties' argument is based on the assumption that it was seen by the board and the Secretary; so the court makes the same assumption.

3. Plaintiff's ratings subsequent to June 1988 were uniformly outstanding.

During oral argument, counsel for plaintiff explained that LTC Adkins does not contend that he was singled out for consideration under sections 638 and 638a for possible early retirement. That review was part of a larger initiative affecting many other personnel. Plaintiff also contends, however, that, but for the adverse incorrect information in the change of rater OER, he would not have been selected for early retirement.

On May 28, 1992, the Secretary rejected the recommendation of the ABCMR and upheld the recommendation of the second PRB to remove LTC Adkins from the promotion list. Plaintiff was thereafter retired under section 3911. Plaintiff brought suit initially in the U.S. District Court for the Eastern District of Virginia, which transferred the action here. Plaintiff filed his complaint with this court on February 16, 1993. The substance of the complaint is that the Secretary's action in not promoting plaintiff was made without explanation, that it was based on an OER that should not have been in the file, and that consideration of the investigative reports was improper. The plaintiff seeks implementation of the ABCMR recommendation, namely, purging of his records, and promotion to Colonel as of February 1, 1990.

## DISCUSSION

*Jurisdiction*

The Federal Circuit has held that it lacks jurisdiction to hear a claim seeking to challenge a discharge from the armed services when the immediate cause of separation was a voluntary resignation or retirement. *Sammt v. United States,* 780 F.2d 31 (Fed. Cir.1985). Accordingly, defendant's primary argument is that LTC Adkins' retirement under section 3911 deprives the court of jurisdiction to hear any complaint about the composition of his personnel record, or the fact that he was not promoted.

Plaintiff has two responses. The court can easily dispose of the first. Contrary to coun-

sel's argument, Chief Judge Cacheris of the District Court for the Eastern District of Virginia has not determined that LTC Adkins was involuntarily retired from the Army. He merely denied without prejudice the government's motion to dismiss. He made no fact findings, and if he had, they would have been of questionable application here. He transferred the action pursuant to 28 U.S.C. § 1631, which presupposes the absence of jurisdiction in the district court.

■ Plaintiff's second argument is that *Sammt* is inapplicable to the particular facts. Specifically, he argues that Congress has replaced the statutory regime in place at that time with new legislation. Major Sammt was scheduled to be retired because he had twice not been selected for promotion. *See* 10 U.S.C. § 3303 (1976) (repealed 1980). Rather than be involuntarily retired he requested voluntary retirement, which was granted. Before the Claims Court, he contended that his non-selection for promotion was based on erroneous information in his military records. The trial court took jurisdiction on the theory that, because his retirement was mandated by statute (10 U.S.C. §§ 3303(d), 3913 (1976) (repealed 1980)), it was actually involuntary. The Federal Circuit rejected that analysis. "[T]he exercise of an option to retire is not rendered involuntary by the imminent imposition of a less desirable alternative." *Sammt,* 780 F.2d at 32.

Congress did indeed repeal sections 3303 and 3913, among others, and replace them at 10 U.S.C. §§ 611–645 with the Defense Officer Personnel Management Act ("DOPMA"), Pub.L. No. 96–513, 94 Stat. 2835 (1980). In the new statutory scheme, Congress has added language that describes when a retirement is involuntary to sections 638 and 638a, which each provide that "[t]he retirement of an officer pursuant to this section [selective early retirement] shall be considered to be an involuntary retirement for purposes of any other provision of law." [4] Based on this new language, LTC Adkins argues that, because the Army would have discharged him

---

**4.** The mechanism that forced retirement in this case was use of selective early retirement, at the Army's option. Only one failure of promotion is necessary currently for an officer to be suscepti-

ble to such a discharge. 10 U.S.C. § 638a. The device in *Sammt* was automatic retirement or discharge upon two passovers for promotion.

on August 31, 1989 pursuant to sections 638 and 638a if he had not selected an earlier retirement date, his retirement was "pursuant to" the actions of a Selective Early Retirement Board.

Defendant contends that if one looks at LTC Adkins' personnel records, one would see that he was eligible to retire under section 3911, and in fact retired under that section on a date that he selected. His form 3713, "Data for Retired Pay," for example, reflects that section 3911 authorized his retirement. Ipso facto, his retirement was under section 3911 and not under section 638. This analysis overlooks the plain wording and actual operative effect of sections 638 and 638a.

These two sections are not retirement provisions in the same sense as section 3911. They do not make an officer eligible to retire if he is not otherwise entitled to do so. They merely permit the military to force those individuals who are eligible to retire to do so earlier than they otherwise would have chosen. Section 638 provides in relevant part:

> (b)(1) An officer ... who is recommended for early retirement under this section or section 638a of this title and whose early retirement is approved by the Secretary concerned *shall*—

> (A) be retired under any provision of law under which he is eligible to retire, on the date requested by him and approved by the Secretary concerned, ... or

> (B) if the officer is not eligible for retirement under any provision of law, be retained on active duty until he is qualified for retirement under section 3911 ... and then be retired under that section....

> ....

> (d) The retirement of an officer pursuant to this section shall be considered to be an involuntary retirement for purposes of any other provision of law.

10 U.S.C. § 638 (emphasis supplied). Section 638 must be read in conjunction with section 638a, which allows the board to recommend a lieutenant colonel for early retirement after he is passed over for promotion to

colonel only once, which was LTC Adkins's circumstance. *See* 10 U.S.C. § 638a(b)(2)(A).

These sections thus operate as a device to force retirement under one of the established eligibility provisions. They are clearly not an independent basis for retirement pay. Nor can they force the discharge of persons not eligible for retirement. If the officer is not eligible at the time selected, he must stay in the service until he is. There can be no "section 638" retirement per se, therefore. The key fact is that if LTC Adkins had not elected an earlier retirement date, his eligibility for retirement pay would still have been based on section 3911. That his personnel records would have treated the retirement as "mandatory" is irrelevant. The fact that LTC Adkins was put in the position of having to choose between an August 31 versus a July 31 retirement date was directed and controlled by section 638. But for section 638 he would not have had to make the choice. Congress apparently saw the connection when it added subparagraph (d). It declared retirements prompted by section 638 to be involuntary, and the court sees no basis for disagreeing.

The circumstances here are thus distinguishable from the typical ones in which an employee or soldier chooses to retire in lieu of some other undesirable alternative. It is "the presence of an alternative to retirement" that makes retirement voluntary. *Slattery v. United States*, 578 F.2d 1388, 215 Ct.Cl. 1003, 1005 (1978). Here there was no alternative to retirement. It was retirement now or retirement slightly later.

It is no answer to say that LTC Adkins labeled his request "voluntary." Congress characterized all retirements pursuant to section 638 as involuntary, and the court's jurisdiction cannot turn on the serendipity of how the officer captions his paperwork. *Cf. Longhofer v. United States*, 29 Fed.Cl. 595, 601 (1993) (inclusion of the words "under protest" did not change nature of retirement).

Because plaintiff did not voluntarily surrender his position, he had a right to continue in it absent proper discharge, and the right to continue to receive pay. Because he has challenged the legality of his discharge

and stated a colorable claim to monetary relief, this court has jurisdiction.

*Justiciability*

■ Although a voluntary retirement precludes a valid claim for money, an involuntary retirement does not guarantee that plaintiff will recover money. This court may have jurisdiction but nevertheless be unable to grant relief. *Cf. Murphy v. United States,* 993 F.2d 871 (Fed.Cir.1993); *Voge v. United States,* 844 F.2d 776 (Fed.Cir.1988). Plaintiff must found his claim upon a deprivation of rights that this court has the competence as well as the power to review; his claim must be justiciable. *See Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 699, 7 L.Ed.2d 663 (1962); *Murphy,* 993 F.2d at 872.

Under 10 U.S.C. §§ 638 and 638a, the selection board could recommend LTC Adkins for early retirement only if he had failed to obtain promotion to colonel, and if his name was not currently on a promotion list. 10 U.S.C. §§ 638(a)(1)(A), 638a(b)(2)(A). Thus, the board could not have selected plaintiff for early retirement but for the Secretary's removal of him from the promotion list. Plaintiff challenges the validity of the Secretary's action.[5] The issue then is whether plaintiff's challenge is justiciable.

This court's determination of whether plaintiff's challenge is a non-justiciable political question is "essentially a function of the separation of powers." *Baker v. Carr,* 369 U.S. at 217, 82 S.Ct. at 710. Courts decline to decide issues where that responsibility is best left to another branch because the Constitution places it there, because the decision is outside the competence of the courts, or because prudence demands respect for the decision of another branch.[6] *Id.*

The Executive's responsibility for national defense is one of the functions with which courts ordinarily decline to interfere, absent a Constitutional or statutory violation. *See, e.g., Department of Navy v. Egan,* 484 U.S. 518, 526–30, 108 S.Ct. 818, 823–25, 98 L.Ed.2d 918 (1988); *Haig v. Agee,* 453 U.S. 280, 292, 101 S.Ct. 2766, 2774, 69 L.Ed.2d 640 (1981); *Gilligan v. Morgan,* 413 U.S. 1, 6–11, 93 S.Ct. 2440, 2443–46, 37 L.Ed.2d 407 (1973). Courts exercise this restraint because the Constitution commits several specifically enumerated military powers to the political branches, *see, e.g., Gilligan,* 413 U.S. at 6–7, 11, 93 S.Ct. at 2443–44, 2446 (declining to review National Guard training and discipline because of constitutional commitment of those responsibilities to Congress and the President in Art. I, § 8, cl. 16, and Art. II, § 2), and because they lack the institutional competence to address military matters, *see Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953) (stating that "judges are not given the task of running the Army"). Because the court finds that the decision to remove an officer from the promotion list falls squarely within the category of military decisions outside of the competence of the courts, it need not conduct the exhaustive textual and historical analysis required to determine whether the Constitution commits this power to the Executive. *See, e.g., Nixon v. United States,* — U.S. —, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993) (examining the text and history of the Impeachment Clause to determine that the power to try impeachments is textually committed to the Senate).

Central to the determination of whether the judiciary is competent to hear an issue is the ability of the court to discern "judicially ... manageable standards for resolving it." *Baker v. Carr,* 369 U.S. at 217, 82 S.Ct. at 710. In *Baker v. Carr,* which first articulated this standard, the Court provided the

---

**5.** It is noteworthy in this regard that LTC Adkins does not contend that his promotion has already become effective. Nor could he. Being placed on a promotion list is not the same thing as being promoted, as the relevant statutory scheme makes clear. Promotions can be delayed, and names can be removed from promotion lists, as his was.

**6.** Although this court does not reside in Article III, the same justiciability concerns adhere. As

an Article I court, this court still must refrain from reviewing an issue when confronted by a "textually demonstrable constitutional commitment of the issue," *Baker,* 369 U.S. at 217, 82 S.Ct. at 710, to the Executive. The concerns about the competence of courts to address certain issues remain the same. Similarly, the "potentiality of embarrassment from multifarious pronouncements by various departments on one question," *id.,* remains the same.

example of cases addressing claims founded on the Guaranty Clause, Art. IV, § 4, which guarantees a republican form of government to each state. *See id.* at 219–226, 82 S.Ct. at 711–14. Claims founded upon the clause present non-justiciable political questions because it contains no criteria indicating what kind of government is republican, or how a court would choose one form of government over another. *See id.* The Court concluded that the clause "is not a repository of judicially manageable standards which a court could utilize independently in order to identify a State's lawful government." *Id.* at 223, 82 S.Ct. at 713.

The constitutional clauses that empower the President to commission military officers are similarly empty vessels. *See* Art. II, § 2, cls. 1, 2 (granting to the President the Commander in Chief and Appointment powers). The only condition on the President's power to appoint is the requirement of the advice and consent of Senate. Neither clause prescribes qualifications for appointments—military or civilian, or sets terms, beyond advice and consent, for making or denying such appointments. Thus, the court finds no criteria in the relevant clauses that would guide it in determining whether the Secretary should have removed LTC Adkins from the promotion list.

Furthermore, the deference traditionally given by the judiciary to military decisions militates against attempting to fashion such criteria. *See Rostker v. Goldberg,* 453 U.S. 57, 70, 101 S.Ct. 2646, 2654, 69 L.Ed.2d 478 (1981) (recognizing that "an imposing number" of Supreme Court cases suggest that even where a challenge to a military decision is based on a claimed constitutional violation, "judicial deference ... is at its apogee"). The Supreme Court has stated without equivocation that Courts are not competent to make policy decisions regarding military personnel. *Gilligan,* 413 U.S. at 10, 93 S.Ct. at 2446 (stating that "[i]t is difficult to conceive of an area of governmental activity in which the courts have less competence"). It has refused to interject the courts into the President's decision not to commission an officer. *Orloff v. Willoughby,* 345 U.S. at 88–

92, 73 S.Ct. at 537–39. In that instance, the Court stated that:

It is obvious that the commissioning of officers in the Army is a matter of discretion within the province of the President as Commander in Chief. Whatever control Courts have exerted over tenure or compensation under an appointment, they have never assumed by any process to control the appointing power either in civilian or military positions.

*Id.* at 90, 73 S.Ct. at 538. In light of such precedent, this court can not presume to fashion standards for resolving plaintiff's claim.

To obtain relief, therefore, plaintiff must demonstrate a specific violation of law. *See Egan,* 484 U.S. at 529, 108 S.Ct. at 825 (stating that "unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs"). Otherwise, resolution of the plaintiff's claim would entail a review of the substance of the Secretary's decision. The court declines to do so, as the Executive's decision to withdraw a military officer's nomination to a higher rank is outside of the competence of the judiciary, and thus presents a non-justiciable political question.

Plaintiff alleges no constitutional or statutory violation. He does allege a violation of the regulations governing promotion, but does so in the most general terms. The only reference made in the complaint is to AR 624–100, presumably on the ground that it was improper for the Secretary to base his decision on materials outside the OMPF. The court notes, however, that Congress has placed no limitations on the President's power to remove officers from a promotion list. 10 U.S.C. § 629(a). This unconditional authority has in turn been delegated and subdelegated in its entirety to the Secretary of the Army. Exec. Order No. 12,396 § 1(b); Memorandum of the Secretary of Defense of January 12, 1993. Thus, nothing in the statute or the regulations limits the material that the Secretary may consider when deciding to remove an officer's name from the promotion list. Without suggesting agreement with

plaintiff's contention that it was error for the PRB to consider the investigative reports, the court finds that nothing restrained the Secretary from doing so.[7]

Plaintiff's suit fails because he has demonstrated no specific constitutional, statutory or regulatory violation. Thus, the court could not resolve his claim without making judgments about LTC Adkins' fitness for promotion.[8] Such decisions are best left to the military, as it is much more competent to decide which qualities it needs in its officers and who best exemplifies them. Given the allegations made here, plaintiff's challenge to the Secretary's decision to remove him from the promotion list presents a non-justiciable political question. In the absence of a promotion, the retirement, although involuntary, was not improper. The Clerk is directed to dismiss the complaint. No costs.

---

7. The court finds unpersuasive plaintiff's argument that the Secretary's decision is invalid because he rejected the ABCMR's recommendations to discount the importance of the investigative report and to delete the remainder of the change of rater OER. The board based its recommendation on equitable assessments. Such actions are within its charter, but this court may reverse the Secretary's decision only if it violated a specific provision of law. The court finds no such violation. Plaintiff had notice of the investigations that produced the reports, and an opportunity to rebut the allegations that prompted them. Nor did the ABCMR recommendation suggest that it was improper to review the investigative reports. With regard to the alleged defects in the OERs, the OMPF before the Secretary was expunged of most of the questionable OER material. The existence and content of the remainder was not legally improper. The ABCMR apparently accepted plaintiff's contention that the rating was unfair due to the unusual nature of his assignment and the lack of knowl-

edge by his rater of his activities, as well as due to the lack of support for the negative characterizations. The board appears to have posited its recommendation on its weighing of the evidence, its decision to credit Adkins' explanation of events, and ultimately on its conclusion that he was entitled to the benefit of the doubt. The Secretary has the discretion to reject that type of counsel.

8. Assuming for the sake of argument that the Secretary's decision not to accept the ABCMR's recommendation could be reviewed for arbitrariness, it plainly was not reversible error to decline to promote. The two investigative reports comprise an adequate basis for sustaining the decision. Even though LTC Adkins created issues of fact as to the trustworthiness or bias of his accusers, it is enough to say that there were several statements supporting a different version from his of the two incidents. It is not for the court to decide which version to credit.