Michael E. NISHITANI, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 96–281C.

United States Court of Federal Claims.

Jan. 29, 1999.

John A. Wickham, Gary Myers & Associates, Evergreen, Colorado, for plaintiff.

John Warshawsky, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Anthony H. Anikeeff, Assistant Director. Steve Ellenbeck, Air Force Legal Services Agency, Rosslyn, Virginia, of counsel.

## OPINION

MARGOLIS, Judge.

This military pay case is before the court on defendant's partial motion to dismiss and motion for judgment upon the administrative record, and on plaintiff's cross-motion for judgment on the administrative record. Plaintiff claims that he is entitled to back pay because Air Force actions denying him defined clinical privileges and special pays,

and the action to remove him from active service were arbitrary and capricious, an abuse of discretion, and contrary to law and regulation. Defendant contends that plaintiff's challenge to the Air Force decisions to deny him defined clinical privileges and special pays and to remove him from active duty in the Air Force present nonjusticiable issues. Furthermore, defendant argues that to the extent the court finds any procedural allegations in plaintiff's complaint justiciable, the United States is entitled to judgment on the administrative record because plaintiff has failed to demonstrate that the Air Force decisions were arbitrary, capricious, made in bad faith, unsupported by substantial evidence, or contrary to law, regulation, or published procedure. Plaintiff responds that the complaint is justiciable, and plaintiff is entitled to judgment on the administrative record because the Air Force removed plaintiff from active duty after violating several military regulations and procedures and deprived plaintiff of property and liberty interests without due process of law. After carefully considering the arguments presented by both parties in their briefs,[1] the court concludes that plaintiff's claim that the Air Force removed him from active duty after violating several regulations and procedures is nonjusticiable. Further, the court concludes that plaintiff was not deprived of a property or liberty interest without due process of law. Therefore, the court grants defendant's motion for judgment on the administrative record and denies plaintiff's motion for judgment on the administrative record.

## FACTS

In 1992, after approximately 25 years as a general surgeon in private practice, plaintiff, Dr. Michael Nishitani, applied to the Air Force to serve on active duty as a general surgeon. The Air Force did not have any available positions in general surgery, but offered plaintiff a direct officer appointment as a Lieutenant Colonel in the emergency room ("ER") specialty. Plaintiff expressed concern to the Air Force about his lack of experience in emergency medicine. In re-

sponse, the Air Force told plaintiff that he would attend an ER short course and work under a board trained ER physician. Plaintiff received a letter dated May 5, 1993, informing him of the dates he was scheduled to attend the ER short course. In June 1993, the Air Force informed plaintiff that the ER short course possibly would be delayed until January 1994.

On August 17, 1993, plaintiff entered active duty in the United States Air Force as an Air Force Emergency Services Physician. In October 1993, the Air Force assigned plaintiff to the Acute Care Clinic ("ACC") at Cannon Air Force Base, New Mexico. The Cannon Air Force Base Hospital was a small medical facility that did not have the resources and staff to offer plaintiff any training or supervised duty in the ACC. Although plaintiff requested that he attend the ER short course and be placed under the supervision of a physician, the Air Force did not provide such training or supervision. Plaintiff immediately began having problems with medical documentation, patient examinations and diagnoses, and patient relations. Consequently, on November 16, 1993, the hospital commander, Colonel William Burner, suspended his provisional privileges to work in the ACC.

At this time, Colonel Burner was ready to seek action to separate plaintiff from the Air Force. He recognized, however, that prior to plaintiff's commissioning, the Air Force promised plaintiff emergency medicine training. The ER short course had been canceled due to budgeting. Instead, Colonel Burner sent plaintiff to another hospital, Ehrling Bergquist Air Force Hospital, at Offutt Air Force Base, Nebraska to work with the chairperson of the Emergency Medicine Department, Dr. Logan, for six weeks in December 1993 and January 1994. Following the completion of this training, Dr. Logan informed Colonel Burner that plaintiff had made every effort to learn while at Offutt Air Force Base, but six weeks of training was inadequate to make substantial improvement with plaintiff. After plaintiff returned to the ACC at Cannon Air Force Base, plaintiff began to have the same problems in patient

---

1. The parties waived the opportunity for oral argument.

relations, medical documentation, and diagnoses.

On March 14, 1994, the hospital commander appointed plaintiff as director of the ACC. In addition to plaintiff's patient load, plaintiff was made responsible for overall clinic management, supervision of two physicians, and direction of patient care performed by 14 technicians. Plaintiff felt overwhelmed in this management role and asked to be removed from the director position so he could concentrate solely on patient care. Colonel Burner denied this request. On June 1, 1994, the hospital commander issued plaintiff an adverse "referred Officer Performance Report" ("OPR") stating that plaintiff "[h]as had an extremely high patient dissatisfaction rate, collecting during this period more written and formal complaints from patients than all 33 of the hospital's other providers combined" and "[d]espite a six week training TDY, which was done not only for orientation to emergency medicine, but also for remedial training in patient sensitivity, there was no discernable improvement in duty performance." Administrative Record, Credentialing Records at 131. Additionally, the OPR noted that plaintiff had missed a large number of diagnoses and had developed a 27–hour per week work schedule after having been directed to work 40 hours per week.

On June 2, 1994, after concern over complaints and other problems, the Air Force relieved plaintiff from his duties as director of the ACC and reassigned him to administrative duties as special assistant to the commander. On August 2, 1994, plaintiff's commander requested an independent evaluation of plaintiff's clinical competence to determine whether plaintiff should be awarded defined (permanent) clinical privileges when his provisional (temporary) privileges expired in September. The evaluator, Dr. Lee, concluded that he "would be extremely reluctant to grant [plaintiff] defined privileges as substantial questions still exist as to the quality of his medical care." The Credentials Review Function met on August 26, 1994, and decided that they were unable to give plaintiff unrestricted defined clinical privileges.[2] In a memorandum dated September 1, 1994,

the Credentials Function Chairperson gave plaintiff notice that she intended to recommend denial of unrestricted defined clinical privileges as well as separation from the Air Force. Additionally, she informed plaintiff that he had the right to have a Credentials Committee review the Credentials Review Function decision. On September 30, 1994, plaintiff requested a Credentials Committee Hearing on his denial of defined clinical privileges. The Credentials Committee met on December 21 and 22, 1994 and recommended denial of defined clinical privileges to plaintiff:

> By his own admission and based on expert testimony, Dr. Nishitani is unprepared to assume the role of an independent acute care provider. His delivery of medical care prior to his United States Air Force commission is not in question, nor is his patriotism. Adequate opportunities to improve his skills as an acute care provider were given, yet improvement was not sufficient to meet the standards required of the position to which he was assigned. Based on the preponderance of the evidence, this board recommends denial of defined clinical privileges to Dr. Nishitani.

Administrative Record, Bd. Of Inquiry Proceedings, Vol. III at 696. Plaintiff appealed the recommendation of the Credentials Committee to the Air Force Surgeon General, who denied his appeal. Because plaintiff could not see patients without clinical privileges, plaintiff's commander informed plaintiff on March 14, 1995 that he was recommending to the Air Force Surgeon General that plaintiff's additional special pay ("ASP"), incentive special pay ("ISP"), and multi-year special pay ("MSP") be terminated. The Air Force Surgeon General approved the termination of plaintiff's ISP and MSP and the withholding of his ASP on September 1, 1995. Also as a result of the denial of plaintiff's defined clinical privileges, on April 5, 1995, plaintiff's commander initiated proceedings to separate plaintiff from the Air Force for substandard duty performance and dereliction of duty.

In August 1995, a Board of Inquiry conducted a hearing to decide whether or not to

---

**2.** A physician cannot practice medicine in the Air Force without clinical privileges.

recommend removal of plaintiff from active duty. Plaintiff argued before the Board of Inquiry that the problems leading to his denial of clinical privileges directly resulted from the Air Force's failure to provide him the ER training he was promised. However, the Board of Inquiry found that plaintiff failed to work 40–hour work weeks, acted in a rude and unprofessional manner toward his patients, failed to meet acceptable leadership and professional standards, failed to provide a response at an Executive Committee of the medical staff meeting on an issue concerning physician coverage of the ACC, and failed to properly document the medical records of his patients. Consequently, the Board of Inquiry concluded that plaintiff should be removed from active duty and awarded an honorable discharge. Following this recommendation, the Secretary of the Air Force ordered that plaintiff be removed from active duty in the Air Force and placed in the Inactive Status List Reserve Section. Accordingly, plaintiff was removed from active duty on June 17, 1996.

In September 1995, the Air Force sent an Adverse Action Report to the National Medical Practitioners Data Bank ("NPDB") stating that the Air Force had denied plaintiff defined clinical privileges because "despite frequent and appropriate feedback and supplemental training as an emergency room physician, he did not adequately evaluate patients who presented to the ER with surgical implications." Pl.'s App., Vol. I at 82–83. The report was filed under the classification of "incompetence/malpractice/negligence." *Id.* at 83. As a result of this action report, in November 1995, the State of Washington Department of Health commenced an investigation of plaintiff through the Quality Assurance Commission. The investigation is ongoing. After plaintiff's removal from active duty in the Air Force, plaintiff's attempts to obtain hospital or clinic employment as a physician have been unsuccessful. Currently, plaintiff is working as a physician assistant at an Indian Reservation.

Plaintiff filed the present suit on May 17, 1996, claiming that the Air Force actions denying him defined clinical privileges and special pays as well as the action removing him from active duty, were arbitrary and capricious, an abuse of discretion, and contrary to law and regulation. Plaintiff asks this court to set aside the abovementioned Air Force actions and award plaintiff all back special pays from the date the Air Force denied his defined clinical privileges.

## DISCUSSION

*I. Plaintiff's Claim That the Air Force Removed Plaintiff from Active Duty After Violating Several Regulations and Procedures Is Not Subject to Review.*

A controversy is justiciable only if courts can finally and effectively decide the controversy under tests and standards they can soundly administer within their special field of competence. *See Sargisson v. United States,* 913 F.2d 918, 922 (Fed.Cir.1990); *Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir.1988). Furthermore, judicial deference is essential in military matters. *See Murphy v. United States,* 993 F.2d 871, 872–73 (Fed.Cir.1993); *Voge,* 844 F.2d at 779. " '[U]nless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs.' " *Voge,* 844 F.2d at 779 (quoting *Department of Navy v. Egan,* 484 U.S. 518, 530, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988)). Accordingly, the Federal Circuit has held thousands of routine military personnel decisions nonjusticiable or beyond the competence or jurisdiction of the courts. *See Murphy,* 993 F.2d at 873.

The merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review. *See Adkins v. United States,* 68 F.3d 1317, 1322 (Fed.Cir.1995); *Moehl v. United States,* 34 Fed.Cl. 682, 688 (1996). However, a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy. *See Adkins,* 68 F.3d at 1323; *Moehl,* 34 Fed.Cl. at 688. The Federal Circuit has emphasized that judicial review is only appropriate where the military's discretion is limited and Congress has established tests and standards against which the court

can measure the military's conduct. *See Murphy*, 993 F.2d at 873; *Strickland v. United States*, 36 Fed.Cl. 651, 655 (1996). "Unless such a test or standard is provided, courts must abstain." *Murphy*, 993 F.2d at 873.

■■ Plaintiff alleges that the Air Force removed him from active duty after violating several regulations and procedures concerning training and assignment. The court cannot review this allegation because the regulations and procedures cited by plaintiff [3] contain no tests and standards against which the court can measure the military's conduct. After a careful review of the training and assignment procedures and regulations cited by plaintiff, the court concludes that these procedures and regulations are at most guidelines or general personnel policies for the Air Force. The cited regulations do not limit the Air Force's discretion or identify set procedures that the Air Force must follow. Therefore, the court is without tests and standards to evaluate the Air Force's conduct.[4] *Cf., e.g., Adkins*, 68 F.3d at 1324–25 (holding that a statute requiring the secretary to base a discharge decision on the

record presented to him and a regulation requiring that an applicant before the ABCMR is assured access to all official records are sufficiently established standards against which the court can measure the military's conduct). In the absence of such tests or standards, this court cannot review the Air Force's actions.[5] *See Murphy*, 993 F.2d at 873. Furthermore, the court concludes that plaintiff is essentially asking this tribunal to review the substance of the Air Force decisions to deny him defined clinical privileges and special pay and to remove him from active service. The court cannot, however, review the merits of these military personnel decisions. *See Adkins*, 68 F.3d at 1322; *Voge*, 844 F.2d at 779–80; *Moehl*, 34 Fed.Cl. at 688.

## II. Plaintiff's Constitutional Claims

Although a service secretary's discretion to release a reserve officer from active duty is generally unfettered, an employment action claimed to be based on a constitutional violation is subject to judicial review. *See Woodward v. United States*, 871 F.2d 1068, 1072–73 (Fed.Cir.1989). In the present case,

---

**3.** Plaintiff contends that the Air Force disregarded the following procedures and regulations relating to training and assignment: AFR 168–13; Joint Commission of Accreditation of Healthcare Organizations ("JCAHO") standard MS.4.1.1; Department of Defense "DOD" Directive 1315.7; AFR 36–20; AFR 31–11; Air Force proctoring standards; AFR 36–23; and DOD Directive 6025.14.

**4.** For example, plaintiff contends that the Air Force disregarded DOD Directive 1315.7 D.4.b.(13), which *allows* for the reassignment of service members with professional skills for the purpose of validating professional credentials or for developing expertise in selected specialized skills before being assigned to independent duty without supervision. This DOD Directive does not *require* reassignment in plaintiff's case nor *require* the Air Force to follow any set procedure.

Plaintiff also makes much of the fact that the Air Force allegedly did not comply with JCAHO standard MS.4.1.1 when it appointed plaintiff as director of the ACC. JCAHO standard MS.4.1.1 provides that the director of each department should be certified by an appropriate speciality board or should affirmatively establish comparable competence through the credentialing process. This standard is apparently only a guideline for military hospitals and is not a requirement or procedure against which the court

can measure the Air Force's conduct. Military hospitals are allowed to be in partial compliance or minimal compliance with any particular JCAHO standard. For example, if the board certification status of all medical staff department directors is determined, but there is no process to determine the comparable competence of directors who are not certified by an appropriate specialty board, the hospital will receive a score of 3 for MS.4.1.1, which means the hospital is in partial compliance with the standard.

**5.** Additionally, the court notes that the judiciary generally does not possess the power to review the training and assignment of military personnel. *See Orloff v. Willoughby*, 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953) (finding the determination to assign a doctor to particular duties in the medical field not within the power of the courts to review); *Voge*, 844 F.2d at 780 (noting that the ultimate responsibility for decisions regarding composition, training, and equipping of the military force is appropriately vested in branches of the government that are periodically subject to electoral accountability); *Wilson v. Walker*, 777 F.2d 427, 429 (8th Cir.1985) (recognizing that traditional notions of judicial restraint and separation of powers require this court to refrain from interfering in matters such as military duty assignments).

plaintiff contends that he was deprived of a property interest in ER training without due process of law. Additionally, plaintiff claims that the Air Force violated his liberty interest because the removal action and the filing of the reason for the removal with the NPDB imposed a stigma that foreclosed other employment opportunities.

### A. Plaintiff's property interest claim

 Property rights are created and defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Zucker v. United States*, 758 F.2d 637, 639 (Fed.Cir. 1985); *Cal–Almond, Inc. v. United States*, 30 Fed.Cl. 244, 247 (1994), *aff'd*, 73 F.3d 381 (1995). " 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' " *Ponder v. United States*, 117 F.3d 549, 553 (Fed.Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998) (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. 2701). Plaintiff alleges that a property interest in the six-week ER short course arose through "mutually explicit understandings" between himself and the Air Force. Although mutually explicit understandings may operate to create property interests, such understandings or tacit agreements must support a legitimate claim of entitlement under an independent source such as state law. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 224 n. 9, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). The court finds that plaintiff has failed to demonstrate that he has a legitimate claim of entitlement to the ER short course. Additionally, the court cannot conclude that a claimed interest in a six-week training course rises to the level of a property interest for purposes of due process analysis.

Finally, assuming arguendo that plaintiff had a property interest in the ER short course, the Air Force did not deprive plaintiff of this interest because plaintiff received equivalent ER training from Dr. Logan.[6] In June 1993, the Air Force informed plaintiff that the six-week ER short course would possibly be delayed until January 1994, and it was later canceled due to budgeting. Consequently, the Air Force sent plaintiff to train with an ER physician for six weeks during December 1993 and January 1994 in lieu of the six-week ER short course. The court concludes, therefore, that the Air Force did not deprive plaintiff of any property interest in ER training.

### B. Plaintiff's liberty interest claim

 Plaintiff contends that the Air Force violated his liberty interest because the removal action and the filing of the reason for the removal with the NPDB imposed a stigma that foreclosed other employment opportunities. The government may not remove an employee in a way that would stigmatize the employee or foreclose future employment opportunities without notice and a hearing at which the employee can test the grounds for removal. *See Roth*, 408 U.S. at 573–74, 92 S.Ct. 2701; *S.A.F.E. Export Corp. v. United States*, 803 F.2d 696, 699 (Fed.Cir. 1986); *Miller v. City of Mission*, 705 F.2d 368, 373 (10th Cir.1983). In the present case, plaintiff received notice of the decisions to deny him defined clinical privileges and special pays and notice of the action to remove him from active duty. Plaintiff then had an opportunity to argue at a Credentials Committee Hearing on December 21 and 22, 1994, at which he testified and was represented by counsel, that he should not be denied defined clinical privileges. Finally, in August 1995, a Board of Inquiry conducted a hearing, at which plaintiff testified and was represented by counsel, to determine whether plaintiff should be removed from active duty. Consequently, even if the court assumes that plaintiff had a constitutionally protected liberty interest, the court must reject plaintiff's claim that his liberty was violated because he in fact received the no-

---

6. Plaintiff conceded that the training he received from Dr. Logan was equivalent to the ER short

course. *See* Pl.'s Cross–Motion for Judgment at 15.

tice and hearing that the Due Process Clause requires.

## CONCLUSION

For the reasons stated above, the court denies plaintiff's motion for judgment on the administrative record and grants defendant's motion for judgment on the administrative record. The Clerk will dismiss the complaint. No costs.